GUARANTY TRUST CO. OF NEW YORK v. ATLANTIC COAST ELECTRIC
R. CO.

(Circuit Court, D. New Jersey. August 22, 1904.)

**1. MORTGAGE—FORECLOSURE—LIEN UPON AFTER-ACQUIRED PROPERTY.**

The mortgage given by the defendant railroad company recited the form of the bonds secured by it, which declared that the bonds were secured by a mortgage upon "all the certain railroad and other property, real and personal, and franchises of said railroad company, whether now owned or hereafter acquired by it." The conveyance clauses of the mortgage limited its lien upon after-acquired property to such property, and to such rights acquired by lease from other railroad companies, as should be "connected with or appurtenant to" the railroad of the defendant company specifically described in the mortgage. *Held:* (1) That the lien of the mortgage embraces rights acquired by leases made after the date of the mortgage to the defendant company by other railroad companies owning railroads connected with the defendant's railroad, and being operated by the defendant company in connection with its own railroad and as a part of its railway system. (2) That its lien also embraces the capital stock of, and a lease acquired from, a new corporation, such new corporation having been created for the mere purpose of subserving the interests of the defendant corporation, which has paid for all the property conveyed to the new corporation, and assumed all its obligations, and the new corporation having issued to the defendant company all its capital stock and executed to the defendant company a lease upon all its property for the term of 99 years, the existence of the new corporation being limited by law to 100 years, and the railroad of the new corporation being operated by the defendant company in connection with its own railroad and as a part of its railway system. (3) That its lien also embraces a line of railroad constructed by the defendant company which is operated by the defendant company, in connection with its own railroad and the railroads on which it has secured leases, as a single railway system. (4) That its lien does not embrace a hotel property which does not appear to be in any wise connected with the operation of its railway system.

(Syllabus by the Court.)

In Equity. On bill to foreclose

Julien T. Davies, for complainant as trustee, and also individually.

Samuel Dickson, for bondholders.

Adrian H. Joline, for defendant.

LANNING, District Judge. This suit is brought to foreclose a mortgage given by the defendant, the Atlantic Coast Electric Railroad Company, to the complainant, the Guaranty Trust Company of New York, as trustee for the holders of 500 of the bonds of the defendant company for $1,000 each.

The only questions to be now considered relate to the extent of the lien of the mortgage. Admittedly, the mortgage covers all the properties specifically described in it. But does it also extend to and embrace the following properties, acquired by the defendant company after the date of the mortgage: The leasehold interest in the West End & Long Branch Railroad, the leasehold interest in the Sea Shore Electric Railroad, the leasehold interest in the hotel property at Pleasure Park Bay, the capital stock of and the leasehold interest in the Asbury Park & Sea Girt Railroad, and the line of rail-

way extending through Belmar? The defendant insists that none of these last-mentioned properties are subject to the lien of the mortgage; the complainant insists that all of them, except the capital stock of the Asbury Park & Sea Girt Railroad, which the complainant claims to hold in its individual capacity as collateral security for the payment of the defendant's promissory note, are subject to its lien; and the bondholders, who are represented by special counsel, insist that all of the properties, including the stock of the Asbury Park & Sea Girt Railroad, are subject to its lien.

Although the authority for the execution of the bonds and mortgage was not given until October 7, 1896, and the mortgage was not recorded until October 13, 1896, the resolution authorizing their execution required them to be antedated July 1, 1896. They were so antedated. As between mortgagor and mortgagee, therefore, the mortgage will be considered as a conveyance of property on July 1, 1896. This was the plain intention of the defendant company, and property acquired by that company between the date of the mortgage and the time of authorizing its execution, or of recording it, as well as that acquired after such authority or record, must be deemed to be future-acquired property. If, then, the mortgage covers any future-acquired property at all, the mere fact that two leasehold interests— one in the West End & Long Branch Railroad and the other in the Sea Shore Electric Railway—were acquired after the date of the mortgage, but before the authority for its execution was given, will not exclude them from the lien thereof.

The mortgage is inartistically drawn. Whether it was the intention of the defendant company to subject to the lien of its mortgage after-acquired properties like those above mentioned must be ascertained from an examination of the various clauses in the mortgage concerning after-acquired properties. On such examination it appears that the mortgagor conveyed to the mortgagee "all the right, title, and interest of the railroad company (the mortgagor) now owned or hereafter in any wise acquired by it in and to all and singular the lines of railroad and railroad tracks and routes and other property, real and personal, hereinbelow described." Then follows, first, a specific description of the lines of railroad owned by the defendant company on July 1, 1896; secondly, the description embraces "all lands and real estate, * * * buildings, improvements, tenements, and hereditaments now owned by the railroad company, or hereafter at any time or howsoever acquired by it, which are or may be connected with or appurtenant to the above described and hereby mortgaged railroad and routes"; thirdly, the description embraces "all and every franchise (including the franchise to be a corporation), right, privilege, and easement of whatsoever kind or nature now or hereafter at any time or howsoever owned, acquired, possessed, enjoyed, or exercised by the railroad company, either by virtue of any act of the Legislature of the state of New Jersey, or * * * of any contract or lease between the railroad company and any other railroad or other corporation * * * which are or may be connected with or appurtenant to the above described and hereby mortgaged railroad and routes." The description further embraces

"all and singular the liberties, privileges, and franchises connected with or relating to the said railroad, routes, and real and personal property hereto [hereby] mortgaged, * * * with all and singular the * * * hereditaments, easements, and appurtenances to the above described and hereby mortgaged railroad routes and real and personal property, franchises and premises, or any part thereof, now or hereafter belonging or in any wise appertaining." The defendant insists that these clauses relating to future-acquired property are limited to the railways specifically described in the mortgage, and to properties appurtenant to such specifically described railways, and that they do not include subsequently acquired leases or stocks, or even the line of railroad constructed through Belmar. To determine the question, the meaning of the words "connected with or appurtenant to" must be ascertained. The phrases "connected with" and "appurtenant to" are not necessarily synonymous. The railroad of the West End & Long Branch Railway Company is physically connected with that of the defendant company at the northerly end of the latter company's main line, and the railroad of the Sea Shore Electric Railway Company is physically connected with that of the defendant company at the southerly end of the latter company's main line. The defendant company secured leases upon these two lines of railroad, and has been operating them in connection with its own road. In Columbia Finance & Trust Co. v. Kentucky Union Railway Co., 60 Fed. 794, 9 C. C. A. 264, it appears that the defendant company in that case executed a mortgage upon its line of railroad, which is specifically described therein, and also upon "the lands, real estate, telegraph lines, railroad tracks, side tracks, bridges, * * * and all other things of whatever kind, belonging or in any wise appertaining, or which have been or may be acquired or provided for use upon or in connection with said railroad, * * * and also all locomotives * * * and other chattels now or hereafter belonging to or appertaining to said railroad, and all property, both real and personal, of every kind and description, which shall hereafter be acquired for use on said railroad, and all the corporate rights, privileges, franchises and immunities, and all things in action, contracts, claims, and demands of the said party of the first part, whether now owned or hereafter acquired, in connection or relating to the said railroad." Here, it will be observed, the clauses relating to after-acquired property were also limited to the preceding specifically described line of railroad. Yet it was held that the lien of the mortgage covered a leasehold interest in another connecting railroad acquired by the defendant company after the execution of the mortgage.

In the mortgage now being foreclosed every "right" of the defendant company acquired after the date of the mortgage by lease from any other railroad company was by express terms included in the lien of the mortgage, provided such "right" should be "connected with or appurtenant to" the railroad therein specifically described. As already stated, the defendant company has been operating the leased railroads in connection with its own road. It has been in possession of and has been exercising the rights acquired by the leases. These rights, if not appurtenant to, are, within

the fair meaning of the language of the mortgage, "connected with" the defendant's railroad. Unless such construction be adopted, the clause of the mortgage relating to rights acquired by lease seems to have no force or effect whatever. If there be doubt as to the true meaning of this clause, or of any other of the clauses relating to after-acquired property, the construction put upon them by the parties to the mortgage at the time of its execution, and the acts done by those parties, may be resorted to as aids in ascertaining their true meaning. 1 Greenl. Ev. § 293; Bradley v. Packet Co., 13 Pet. 89, 10 L. Ed. 72; Reed v. Merchants' Mutual Ins. Co., 95 U. S. 23, 24 L. Ed. 348. And in Central Trust Co. v. Kneeland, 138 U. S. 414, 11 Sup. Ct. 357, 34 L. Ed. 1014, the court resorted to the language of the prospectus issued for the purpose of inviting investors to purchase the bonds of the Toledo, Delphos & Burlington Railroad Company, and to the language of the resolution of the directors of the company authorizing the execution of the mortgage intended to secure those bonds, for the purpose of confirming the construction given by the court to the after-acquired property clause of the mortgage. In the case now in hand we find the resolution of the directors of the defendant company, passed October 7, 1896, embodied in full the form of bonds intended to be secured by the mortgage, and expressly approved that form. We also find that the same form of bonds is quoted in full in the recitals of the mortgage. These bonds declared that they were secured by a mortgage conveying to the trustee (the complainant in this case) "all the certain railroad and other property, real and personal, and franchises of said railroad company, whether now owned or hereafter acquired by it." It thus appears that not only were the holders of these bonds informed that their mortgage security was intended to apply to and cover all after-acquired property of the defendant company, but that all other creditors of the defendant company received notice of such information and intention when the mortgage was placed on record. While the language of the mortgage, in its conveyance clauses, seems to restrict its lien upon after-acquired property to such property as is connected with or appurtenant to the railroad lines specifically described, and thus to limit the language of the bonds, the rights acquired by the two leases from the West End & Long Branch Railroad Company and the Sea Shore Electric Railway Company must, in view of all the facts above stated, be deemed connected with or appurtenant to the specifically described railroad lines of the defendant company, and to be subject to the lien of the mortgage.

The next question is, does the mortgage cover the capital stock of, or the leasehold interest acquired from, the Asbury Park & Sea Girt Railway Company? The Asbury Park & Sea Girt Railway Company was organized under the provisions of the act of the Legislature of New Jersey entitled "An act to authorize the formation of traction companies for the construction and operation of street railways or railroads operated as street railways, and to regulate the same," approved March 14, 1893. P. L. p. 302. That act declares that the period during which a corporation organized under its provisions may continue shall not exceed 100 years. The term of its

corporate life is required to be set forth in its certificate of incorporation. The certificate is not in evidence, but it will be assumed that the period of its existence is the maximum period of 100 years. The railroad now owned by this corporation was formerly owned by the Asbury Park & Belmar Street Railway Company. The latter company having given a mortgage covering its railroad property, that property was purchased at a foreclosure sale by a reorganization committee of the bondholders secured by the mortgage. While they held the title, on March 29, 1898, the directors of the Atlantic Coast Electric Railroad Company, the defendant company in this case, passed the following resolution for the purchase of the property held by the reorganization committee:

"Whereas, Messrs. Acton C. Hartshorne and G. B. M. Harvey, acting as a reorganization committee and in representing themselves and other owners of the first and second mortgage bonds of the Asbury Park and Belmar Street Railway Company, have acquired title under a decree of the United States Circuit Court to the property, rights, and franchises of the Asbury Park and Belmar Street Railway Company, and to its railroad and routes; and whereas, said reorganization committee have offered to dispose of the same to this company: Be it therefore resolved, that this company purchase from said reorganization committee the property above described upon the following terms: First. This company to execute and deliver to the Monmouth Trust and Safe Deposit Company, as trustee, a purchase-money first mortgage of the amount of $50,000 upon the railroad and other property so purchased, securing fifty 20 year gold bonds bearing 5% interest, of $1,000, redeemable at the option of the company at 105, the interest thereon to be paid semiannually on the first days of September and March, and said bonds when issued to be delivered to or on order of said reorganization committee. This company to deliver to or on the order of said committee, or either of them, 110 of its general mortgage bonds now held in the treasury of the company, and to issue to or on the order of the said committee, or either of them, 5,000 shares of the capital stock of this company."

The provision of the complainant's mortgage concerning the certification and issue of the 500 bonds secured by it is as follows:

"Three hundred and fifty of the issue secured hereby shall be certified by the trustee and issued to or upon the order of the railroad company for the purposes of its business from time to time upon its demand expressed by a resolution of its board of directors, and each of such resolutions shall constitute full authority and protection to the trustee in certifying bonds in accordance therewith. The remaining one hundred and fifty of the hereby secured bonds shall be certified and issued only for the purpose of making payment for additions to and extensions of the railroad of the railroad company, or for a new power house, or additional machinery, or any of said purposes, from time to time, upon receipt by the trustee of a resolution of the board of directors of the railroad company stating the amount of bonds required and the purpose for which the same are to be used, and accompanied by a certificate signed by the president and treasurer of the railroad company that the bonds so called for have been disposed of for one or more of the purposes herein mentioned; and each such resolution and certificate shall constitute full authority and protection to the trustee in certifying bonds in accordance therewith."

On the same day that the directors of the defendant company passed the resolution authorizing the purchase of the property of the Asbury Park & Belmar Street Railway Company—that is, on March 29, 1898—they also passed the following resolution:

"Whereas, by the terms of the general mortgage of this company to the Guaranty Trust Company of New York, as trustee, securing bonds of this company to the amount of $500,000, it is provided that $150,000 of said bonds

shall be certified and issued only for the purpose of making payments and expenses of the railroad of this company, from time to time, upon receipt of the trustee under said mortgage of a resolution of the board of directors of this company stating the amount of bonds required and the purpose for which the same are to be used: Now, therefore, be it resolved, that the amount of said general mortgage bonds of this company now required to be certified and issued is $110,000, or 110 bonds of a thousand dollars each, and that the purpose for which the same are to be used is the acquisition by this company of the railroad and routes and other property and franchises of the Asbury Park and Belmar Street Railway Company recently sold under foreclosure and now about to be purchased by this company."

And on the same day a copy of the last-quoted resolution was delivered to the complainant, and the president and treasurer of the defendant company certified to the complainant that the $110,000 of bonds had been disposed of "for the purpose of acquiring, as an addition to and extension of its railroad, the railroad and routes, and railroad and other property and franchises heretofore owned and operated by the Asbury Park & Belmar Street Railway Company, and recently sold under foreclosure proceedings, the same being now about to be acquired by said Atlantic Coast Electric Railroad Company." And on the same day the complainant certified and delivered to the defendant company the $110,000 of bonds thus required. On April 20, 1898, a report was made to the directors of the defendant company at their meeting held on that day that counsel had advised that, instead of having the property of the Asbury Park & Belmar Street Railway Company conveyed directly to the defendant company, a new corporation should be organized to take the title, and that the defendant company should own all the equity in the property over and above the $50,000 purchase-money mortgage. The directors thereupon passed the following resolutions:

"Resolved, that in the event of counsel finally deciding it to be advisable to take over the Asbury Park and Belmar property heretofore purchased by this company through the ownership of stock in a new corporation to be created for that purpose, the proper officers of this company are hereby authorized and directed to secure the incorporation of such company, and in all other respects to pursue the method proposed by counsel: provided that this company shall own the entire equity in the property, subject only to a purchase-money mortgage of $50,000; and be it further resolved, that this company guaranty the payment of the principal and interest of bonds to be issued by such new corporation to the amount of $50,000 gold coin; and be it further resolved, that the proper officers of this company are hereby authorized and directed to sign upon each of said bonds a proper guarantee to that effect on behalf of this company."

On the same day—April 20th—the stockholders of the defendant company, at a meeting held by them, adopted the following resolution:

"Resolved, that the action of the board of directors in the matter of acquiring from Messrs. Acton C. Hartshorne and G. B. M. Harvey the property rights and franchises of the Asbury Park and Belmar Street Railway Company, as set forth in their resolutions adopted at their meetings of March 29, 1898, and April 20, 1898, be in all things ratified, approved, and confirmed."

Accordingly, some time before May 27, 1898, a new corporation was organized under the name of the Asbury Park & Sea Girt Railway Company. This new corporation took the title, executed the purchase-money mortgage for $50,000, delivered all its capital stock

to the defendant company, and on August 27th executed and delivered to the defendant company a lease of all its property for a term of 99 years from September 1, 1898. By this scheme, it will be observed, the defendant company acquired every tittle of the property of the new corporation except the reversionary interest represented by the period of less than nine months running from the end of the lease until the end of the new corporation's life—an interest the value of which must be infinitesimal. The defendant company further, it will be observed, guarantied the payment of the principal and interest of the $50,000 mortgage. By the lease which it secured it also covenanted to pay the taxes, assessments, license fees, and charges imposed on the new corporation or on the demised property, and an annual rental of $6,000, which, of course, would come back to the defendant company as the owner of all the stock of the new corporation. Equity regards the substance of a transaction, and not its mere form. In equity the defendant company must be regarded as the purchaser of the property transferred by the reorganization committee to the Asbury Park & Sea Girt Railway Company. The latter company is a corporation practically in name only. It has no assets, and all its liabilities have been assumed by the defendant company. It was created merely to subserve the interests of the defendant company, and with the express understanding that the defendant company should own the entire equity in the property of the new corporation over and above the purchase-money mortgage of $50,-000. The proofs show that the railroad of the new corporation forms a continuation of the roads of the defendant company and the Sea Shore Electric Railway Company, and that it has been operated by the defendant company as a part of its railway system, and in connection with the defendant company's property specifically described in the mortgage given by it. It is clear, therefore, that the lien of the complainant's mortgage extends to and embraces both the capital stock of, and the rights acquired under the lease from, the Asbury Park & Sea Girt Railway Company. The lien of the mortgage upon the capital stock, however, is subject to a superior equitable lien of the complainant in its individual capacity. That superior lien arises from these facts: The mortgage does not, in express terms, cover the capital stock. It is held to do so, as between the mortgagor and mortgagee, because the mortgagor company is in equity the owner of the property, the mere naked legal title to which is vested in the Asbury Park & Sea Girt Railway Company, and because the only way by which the lien of the mortgage upon that equitable ownership can be enforced is by substituting for the railroad property itself that which fully represents it, namely, the capital stock of and the lease made by the new corporation. But, after the stock had been delivered to the defendant company, it deposited the stock with the complainant, in its individual capacity, as collateral security for the payment of a loan of $100,000. This was on November 11, 1898. The complainant, on March 29th preceding, had delivered to the defendant company mortgage bonds to the amount of $110,000, to be used in the purchase of the property formerly of the Asbury Park & Belmar Street Railway Company.

There is no evidence showing or tending to show that the complainant at any time before November 11th received notice, or had any knowledge, that the defendant company had changed its purpose from that declared on March 29th, or that the property of the Asbury Park & Sea Girt Railway Company was the same as that formerly owned by the Asbury Park & Belmar Street Railway Company. Neither does it appear that the complainant, before November 11th, had received any information sufficient to put it upon inquiry as to the disposition made of the $110,000 of bonds, or as to the means by which the stock of the new corporation was acquired. The stock was evidently accepted as collateral security by the complainant in good faith, and a decree that the lien of the mortgage is superior to its rights would be inequitable. The line of railroad extending through Belmar is also covered by the mortgage. It was constructed by the defendant company, and $40,000 of the mortgage bonds were used in defraying the cost of the construction. It constitutes the southernmost portion of the defendant company's railway system, is joined to the railroad of the Asbury Park & Sea Girt Railway Company, and has been operated by the defendant company in connection with its other property.

The rights acquired by the lease of the Pleasure Park Bay property, which is located at the extreme northern end of the defendant company's railway system, are not covered by the mortgage. That is a hotel property. There is a provision in the lease that the defendant company may remove from the demised premises all railroad tracks which it may place thereon, but there is no proof that any such tracks have been placed thereon, or that the property has been used in connection with or as appurtenant to the defendant company's railroad. The only evidence in the case, exclusive of the lease itself, which refers to this property, is that of Charles L. Speir, who says merely that the property was turned over to the receiver appointed in this case. If this hotel property has been used by the defendant company as a place of pleasure for the patrons of its railroad, and as a means of inducing increased patronage of its railroad, the proofs do not disclose such use. The language of the mortgage is not sufficiently comprehensive to include property so situated.

A decree will be made in accordance with the views above expressed.