CENTRAL TRUST CO. OF NEW YORK v. DENVER & R. G. R. CO. et al.

(Circuit Court of Appeals, Eighth Circuit. December 7, 1914.)

Nos. 4078, 4079.

1. RAILROADS ⬤⟶167—MORTGAGES—CONSTRUCTION—PROPERTY INCLUDED.

A railroad company owned a portion of the stock and a lease jointly with another company on the property of a junction railroad company. On a foreclosure sale of its property, both the stock and leasehold interests were sold and conveyed, by specific reference in the deed, to the purchaser, who, in conveying to a new company, included the leasehold interest but omitted the stock interest, as well as other property acquired by him at the sale. The new company executed a trust deed to complainant to secure an issue of bonds, which covered specifically the railroad and telegraph lines so acquired, together with all after-acquired property, and also "all the property, right, title, and interest of the railway company in and to the following railroads and railroad properties leased by the railway company," followed by a description of the property of the junction railroad company. Held, that although the mortgagor had acquired by delivery from the purchaser at foreclosure sale, and then owned the stock interest in the junction company, it was not covered by the mortgage, nor did it pass under the after-acquired property clause, and that complainant had no interest in such stock which would support a suit to question the disposition made of it by the mortgagor.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 519–533; Dec. Dig. ⬤⟶167.]

2. RAILROADS ⬤⟶169—INSOLVENCY—RIGHTS OF MORTGAGEE IN UNMORTGAGED PROPERTY.

A mortgagee of a railroad company has no such interest in its unmortgaged property as a general creditor as will support a suit to enjoin a transfer thereof, although the mortgagor is insolvent, where it is not shown that the mortgaged property is insufficient to pay the mortgage debt.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 536–548; Dec. Dig. ⬤⟶169.]

Amidon, District Judge, dissenting.

Appeals from the District Court of the United States for the District of Colorado; John A. Riner, Judge.

Suit by the Central Trust Company of New York, trustee, against the Colorado Midland Railway Company, the Denver & Rio Grande Railroad Company, the Rio Grande Junction Railway Company, and George Jay Gould. From a decree dismissing the bill as to the two last-named corporations, complainant appeals. Affirmed.

On December 13, 1912, the appellant brought suit against the Colorado Midland Railway Company, hereafter called the Midland Company, praying the appointment of receivers for all its property under a mortgage or deed of trust to the complainant, as trustee, to secure certain bonds of the Midland Company, and if the earnings proved insufficient, under the receivership, to pay the interest on the bonds, a decree of foreclosure be entered, and that complainant have general equitable relief. On the same day service was had of the subpœna and the District Court, upon appearance of the defendant by solicitors, appointed Mr. George W. Vallery, then president of the defendant, as receiver of all its property. On March 7, 1913, the receiver filed a petition for leave to pay rent to the Rio Grande Junction Company. In this petition he said: "That the total outstanding stock of said Junction Company is

20,000 shares, of which the Midland Company, up to a comparatively recent time before the commencement of this receivership, owned 7,371½ shares; that a much larger number of shares of said stock theretofore belonged and still belongs to the Denver Company; that said 7,371½ shares, heretofore the property of the Midland Company, as aforesaid, had prior to the appointment of your receiver been pledged by said Midland Company as security for a loan, and upon the nonpayment of said loan were sold by the pledgee and purchased by the Denver Company; that at the present time said Denver Company holds and claims to own said 7,371½ shares of the stock of said Junction Company, which together with other stock of said Junction Company, held and claimed to be owned by said Denver Company, comprises all the stock of said Junction Company, with the exception of a few hundred shares, the exact amount of such outstanding shares being unknown to your receiver; that complainant herein, and as well certain of the bondholders of the Midland Company, and as well certain creditors of said company, have claimed, and still claim, that said sale of said pledge stock was and is invalid and void, on the ground that said stock was and still is subject to the lien of the mortgage to secure bondholders, given by the Midland Company to complainant herein, and upon the further ground that if said stock was a free asset, and not covered by the lien of said mortgage, the sale was for divers reasons nevertheless invalid and void and said stock is still the property of the Colorado Midland Railway Company, and that said company or your receiver alone is entitled to any dividends which may be declared and paid thereon, and that your receiver is in grave doubt as to the validity of said sale and whether or not said pledged stock is legally the property of the Denver Company or whether the Midland Company is still the legal owner thereof."

On March 19, 1913, the complainant, having obtained leave to file an amended bill of complaint, did so, making defendants, not only the Midland Company, but the Denver & Rio Grande Railroad Company, hereafter called the Denver Company, the Rio Grande Junction Railway Company, hereafter called the Junction Company, and George Jay Gould. In this bill were set up substantially the facts in the original bill, and also those hereafter stated in relation to the stock once held by the Midland Company in the Junction Company, and that it was subject to complainant's mortgage, and prayed that an injunction issue against the Denver Company, the Junction Company, and George Jay Gould. The new defendants all appeared. On April 9, 1913, the Denver Company and the Junction Company filed separate motions to dismiss the bill as to them. On May 9, 1913, on leave granted, the complainant filed its second amended bill of complaint, and the court ordered that the motions of the Denver Company and the Midland Company to dismiss the bill do stand and be taken as motions to dismiss the second amended bill. On June 26, 27, and 28, 1913, the application for temporary injunction was fully submitted to the court upon numerous affidavits and by it taken under advisement. On July 15, 1913, with leave of court, the complainant filed its third amended and supplemental bill of complaint. It covers 25 pages of the present record. This bill contained allegations showing the jurisdiction of the federal court, and then alleged the existence of two mortgages upon the lines of the Colorado Midland Railway Company, hereafter called the Old Midland Company; a consolidation in 1893 of the Old Midland Company with the Aspen Short Line Railway Company under the name of the Colorado Midland Railroad Company; that the mortgages upon the property of the Colorado Midland Railroad Company were foreclosed and the property sold and conveyed to Frederick P. Olcott, who in turn conveyed it to the New Midland Company, and it gave this complainant the deed of trust in suit. The origin and history of the Junction Company is set out in full, from which it appears that the Junction road was constructed by the Junction Company under an agreement with the Denver and the old Midland Companies, by which the Junction road was leased for 50 years to the two railroads (that is, the Denver and Midland), and that each of said roads became the owner of 7,371½ shares of its stock, its total stock being 20,000 shares, of which originally outside parties held 5,257 shares; that the Midland's certificate of shares, after being included in complainant's

deed of trust, was taken by the Midland Company and deposited in pledge with the Equitable Trust Company of New York to secure a loan; that this certificate was sold by the Equitable for nonpayment of its loan and bought by the Denver Company. The bill in effect charges fraud on the part of the Denver Company in this transaction. It closes with the prayer that the Denver Company be enjoined from voting or drawing dividends upon the 7,371½ shares of stock in the Junction Company, acquired through sale by the Equitable, and that it likewise be enjoined from drawing dividends or voting upon any stock acquired by it out of the 5,257 shares originally owned by outside parties, and from exercising any acts of ownership over same, and from claiming that it is not covered by the Midland trust deed, and from, through the Junction Company, collecting any rents on the Junction road from the Midland Company, and from declaring a forfeiture of its lease therein, and, as against the Junction Company, that it be enjoined from transferring the Equitable Trust Company stock, and from paying any dividends thereon, except to some one representing the Midland Company, and from collecting from the Midland Company any arrears of rent, and from declaring any forfeiture of the lease.

This brief synopsis, while lacking many elements of the bill, will be sufficient for an understanding of the opinion of the court. By the order permitting its filing it was provided that the separate motions of the defendants the Denver & Rio Grande Railroad Company and the Denver & Rio Grande Junction Railway Company, to dismiss the bill of complaint herein, stand and be taken as motions to dismiss the third amended and supplemental bill of complaint filed herein this day. This motion of the Junction Railway Company was as follows: "The defendant the Rio Grande Junction Railway Company hereby moves that the bill of complaint in the above-entitled suit, and the whole thereof, be dismissed as against this defendant for insufficiency of fact to constitute a valid cause of action in equity against said defendant in this: (1) It appears by the plaintiff's own showing by said bill that it is not entitled to the relief prayed by the bill against this defendant. (2) It appears by the said bill that certificates for the 7,371½ shares of this company's capital stock formerly held by the defendant the Colorado Midland Railway Company, as set forth in said bill, have never been delivered to the plaintiff; and it also appears by said bill, and especially by the mortgage (Exhibit A) thereto attached and made part thereof, that the plaintiff has not and has never had any lien upon, or any right, title, or interest whatsoever in, said 7,371½ shares of stock, or any portion thereof. * * * (4) That there is in the said bill of complaint no allegation of fact as to any action taken or proposed by this defendant which would entitle the plaintiff to any relief whatsoever as against this defendant."

The motion of the Denver Company was as follows: "The defendant the Denver & Rio Grande Railroad Company hereby moves that the bill of complaint in the above-entitled suit, and the whole thereof, be dismissed as against this defendant for insufficiency of fact to constitute a valid cause of action in equity against said defendant in this: (1) It appears by the plaintiff's own showing by said bill that it is not entitled to the relief prayed by the bill against this defendant. (2) It appears by the said bill that the alleged cause of action as against this defendant is based wholly on the acquisition by this defendant of certain 7,371½ shares of the capital stock of the Rio Grande Junction Railway Company formerly held by the defendant the Colorado Midland Railway Company; and it also appears by the said bill, and especially by the mortgage (Exhibit A) attached to and made a part of said bill, that the plaintiff has not and has never had any lien upon, or any right, title, or interest whatsoever in, said 7,371½ shares of stock, or any portion thereof."

On September 23, 1913, the court, without special reference to the application for a temporary writ of injunction, sustained the motion of the Denver Company and the Junction Company to dismiss as to them, and pursuant thereto dismissed the action as to said defendants. The complainant perfected two appeals: First, from the failure to allow a temporary writ of injunction; and, second, from the order of dismissal. The appellees have filed

in this court a motion to dismiss the appeal from the failure to grant a temporary writ of injunction. This motion has been submitted with the case.

C. C. Dorsey, of Denver, Colo. (Albert Rathbone, Arthur H. Van Brunt, and Albert Stickney, all of New York City, Gerald Hughes, of Denver, Colo., and Joline, Larkin & Rathbone, of New York City, on the brief), for appellant.

Joel F. Vaile, of Denver, Colo. (Elroy N. Clark and Russell G. Lucas, both of Denver, Colo., on the brief), for appellees.

Before HOOK and SMITH, Circuit Judges, and AMIDON, District Judge.

SMITH, Circuit Judge (after stating the facts as above). This case has been submitted upon the correctness of the ruling on the motions to dismiss and the refusal to pass upon the application for a temporary injunction with an elaboration and care that is to be approved. It has been examined with great care, but it cannot be expected that this court will in an opinion review all the hundreds of authorities cited.

The motions to dismiss were filed under rule 29 (188 Fed. xix, 109 C. C. A. xix) of those in force February 1, 1913, and have the force and effect of demurrers. In the consideration of such motions the court cannot consider affidavits filed by defendants on disputed questions of fact. This additional difficulty is met with at the outset that, while many affidavits were introduced and are in the record offered by both the complainant and defendants, they were offered on the application for a temporary injunction and not on the motion to dismiss.

Inasmuch as it seems desirable that the court first pass on the motions to dismiss, the court, in considering them, can only consider the third amended and supplemental bill, including, however, the exhibits incorporated therein and such additional matters as are conceded by the complainant.

[1] No allegations were made as the basis of reformation of the mortgage (see 27 Cyc. 1093), and no specific prayer or argument therefor has been made. The question, then, is whether, under the allegations of the petition, the plaintiff had a mortgage on the stock in the Junction Company owned by the New Midland Company or could maintain this action without such mortgage. In its argument the complainant says:

"Like the deed from Mr. Olcott to the Midland Company this mortgage did not expressly describe the Junction stock nor any corporate stock whatever."

This requires a critical examination of the mortgage to see what, if any, language therein includes the stock. The mortgage provides that:

"Whereas, the railway company has, by virtue and in pursuance of the authority granted it by the laws of the state of Colorado and its certificate of incorporation, purchased and acquired and now owns, holds, maintains and operates the lines of railroad formerly held, owned, maintained and operated by the Colorado Midland Railroad Company."

And later provides that:

"Whereas, the railway company, in the exercise of the powers in that behalf possessed by it under the laws of the state of Colorado, and its certificate

of incorporation, and for the purpose of paying and discharging its obligations and indebtedness created and incurred in the purchase of the said property of said the Colorado Midland Railroad Company, and of paying and discharging other obligations and indebtedness created by it, and in order to provide for the payment, funding, exchanging, and retiring of the said mortgage bonds issued by said the Aspen Short Line Railway Company, and to provide for the purchase of the railroad and railroad property of said the Busk Tunnel Railway Company, in case it shall be deemed advisable and proper to make such purchase, and for its other lawful corporate purposes, and in accordance with resolutions duly adopted by its stockholders and by its board of directors at meetings of said stockholders and of said board of directors, duly and regularly called and held, has determined to make and issue its first mortgage gold bonds to the aggregate amount of ten million dollars ($10,000,000)," and "hath granted, bargained, sold, aliened, remised, released, conveyed and confirmed, and by these presents doth grant, bargain, sell, alien, remise, release, convey and confirm unto the trustee, party of the second part, and to its successor or successors in the trust herein, all the railways, railway property and franchises of the railway company, party of the first part, of every kind and nature, whether now owned or hereafter to be acquired, and however owned, held or enjoyed, and more particularly described as follows: The railway and lines of telegraph formerly owned by the Colorado Midland Railroad Company, now owned by the railway company, party of the first part. * * * All the property, right, title and interest of the railway company in and to the following railroads and railroad properties *leased* by the railway company: * * * (3) The railroad of the Rio Grande Junction Railway Company, a corporation of the state of Colorado, extending from a connection with the said road of said the Denver & Rio Grande Railroad Company at or near the mouth of Rifle creek aforesaid, in a southwesterly direction to a connection with the said road of said the Denver & Rio Grande Railroad Company on the east line of the northwest quarter of section twenty-three (23), township one (1) south, range one (1) west of the Ute meridian, county of Mesa, state of Colorado, being about sixty-two and eight hundredths (62.08) miles in length, more or less. * * * Also all corporate franchises of every nature whatsoever, relating to said lines of railroad and telegraph, owned or leased by the railway company as aforesaid, together with all and singular the income, endowment, advantages, tenements, hereditaments and appurtenances to said lines of railway and telegraph belonging or in any wise appertaining, and the reversion and reversions, remainder and remainders, tolls, incomes, rents, profits and issues thereof, and also all the estate, right, title, interest, property, possession, claim and demand whatsoever, as well in law as in equity, present or prospective, of the railway company, in and to the said lines of railway and telegraph above described and owned or leased by the railway company, and every part of the same and every parcel thereof, with the appurtenances."

It is apparent that the Old Midland Company and the New both held at least two valuable claims in the Junction property: First, the stock interest for 7,371½ shares; and, second, a lease jointly with the Denver Company of its visible property. In the foreclosure proceeding of the Old Midland of 1897 the master's deed to Frederick P. Olcott transferred all the property held under the receivership. This was on the 8th day of September, 1897. In this deed was the following description:

"Stock of the Rio Grande Junction Railway Company, seven thousand three hundred seventy-one and one-half (7,371½) shares, par value one hundred dollars ($100.00) per share."

There was also included in this deed the Busk Tunnel Railway Company property. When Olcott came to deed the property over to the New Midland Company there was omitted both the stock in the Junc-

tion Company and the Busk Tunnel Railway, and both were omitted from the trust deed to the complainant, but there was specifically carried therein the leasehold interest in the Junction Railway.

The primary question is whether the trust deed accurately and specifically described the property here chiefly in question, viz., the stock in the Junction Company. Thompson on Corporations (2d Ed.) par. 2571. It is claimed that the whole transaction gave the Old Midland Company an equitable interest in the Junction Company and its property. As sustaining this, the appellant cites the unpublished opinion of the presiding judge of this court in the case of Ames et al. v. Union Pacific Railway Co. et al.; National Waterworks Co. v. Kansas City (C. C.) 78 Fed. 428; Guaranty Trust Co. v. Atlantic Coast Electric R. Co. (C. C.) 132 Fed. 68; Id., 138 Fed. 517, 71 C. C. A. 41; New England Waterworks Co. v. Farmers' Loan & Trust Co., 136 Fed. 521, 69 C. C. A. 297; In re Rieger, Kapner & Altmark (D. C.) 157 Fed. 609; Linn & Lane Timber Co. v. United States, 196 Fed. 593, 116 C. C. A. 267; and numerous other cases.

Let it be conceded that this position is correct, and let it further be conceded that the same equitable interest passed to the New Midland Company. There is nothing to prevent an owner of such a character from subdividing its interest and conveying one part to one vendee and another part to another. The deed to Frederick P. Olcott conveyed both the stock interest in the Junction Railway and the lease upon that railway. When he came to deed to the New Midland Railway he deliberately omitted the stock and the Busk Tunnel Railway, and they were omitted from the trust deed to the complainant, but said trust deed expressly covers the lease upon the Junction Railway. If the New Midland Railway ever acquired this stock it acquired it, not by the deed from Olcott, but by delivery to the New Midland Company. It appears that on December 8, 1897, Mr. George W. Ristine, president of the New Midland Company, sent the certificate for these shares of stock to the secretary and treasurer of the Junction Company, with a request that a new certificate be issued and sent to him. This was done, and the stock has always been in the possession of the New Midland Company until pledged to the Equitable Trust Company.

From these undisputed facts it is clearly apparent that the trust deed to the complainant never covered it. The truth is that this stock had always been carried on the books of the Old Midland Company at a valuation of $1. It had paid no dividends up to the first foreclosure and was at that time regarded as of substantially no value, except for its control over the Junction Company. If the New Midland Company had not only a lease upon but a stock interest in the Junction Company, and in addition thereto had some general equity in the property of the Junction Company, by deliberately striking the stock from the description in the trust deed it distinctly evidenced its purpose to separate its interests in the Junction Company, and the complainant, having no mortgage upon the stock cannot, maintain an action to determine where the title to the stock is or to enjoin any proceedings in connection therewith under its trust deed.

In what has been said there has been no reference to the difference

between existing property in a railroad company at the time of the execution of a mortgage and after-acquired property. The latter is always of necessity covered by some general language, as no one knows what the specific description of after-acquired property is to be. It is therefore essential that no specific description of it be inserted, but that it be covered by a general description. But in this case the stock in question had been in existence for eight years as the property of the Old Midland Company. It and the leasehold had both been specifically described in the deed to Olcott. When the company came to give its trust deed to complainant, it left the leasehold in the description but struck out the stock. As this property was in existence and the property of the railroad, there can be no reason assigned why a specific description of the leasehold was inserted and the stock omitted and why this stock was at all times allowed in the custody of the railroad company, except the quite manifest one that it was not then regarded as of intrinsic value.

[2] It is claimed, however, that the complainant has the rights of a creditor and that it can maintain the action in its capacity as a general creditor of the New Midland Company, and attention is called to the fact that the complaint alleges that the New Midland Company is insolvent, but it is not alleged in the complaint that the property mortgaged is not sufficient to ultimately realize the amount of the trust deed; and the mere fact, if it be a fact, that the Midland Company owes other parties would not entitle the complainant to maintain this suit, if its own security is adequate to meet the obligations due it, nor is there anything in the case of Central Improvement Co. v. Cambria Steel Co., 210 Fed. 696, 127 C. C. A. 184, which would tend to sustain any such right upon its part. No reason is given in the final bill why the Junction Company could not declare a forfeiture of the lease under its terms, if the stipulated rent is not paid and there is no basis for any other of the injunctive relief sought.

The motions to dismiss were properly sustained. This does not amount to a holding that the allegations of the bill if made by the New Midland Company or its receiver might not be sufficient.

The motions to dismiss having been sustained, there was nothing on which to issue an injunction, and, without passing on the motion to dismiss the appeal from the failure to grant an injunction, the action of the court in both matters is affirmed.

AMIDON, District Judge, dissents.