VALLERY v. DENVER & R. G. R. CO. et al.

(Circuit Court of Appeals, Eighth Circuit. August 2, 1916.)

No. 4663.

1. RECEIVERS ☞167—POWERS—RIGHT TO MAINTAIN SUIT.

An order of a federal court in a foreclosure suit appointing a receiver for all of the property of a railroad company, in accordance with the prayer of the bill and with the consent of the company, was within the jurisdiction of the court, and is not void as against collateral attack even

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

as to property which as afterward determined was not within the mortgage, and the receiver, under the authority conferred by his appointment, may maintain a suit with respect to such property.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 320; Dec. Dig. ⬪167.]

2. COURTS ⬪264(3)—JURISDICTION OF FEDERAL COURTS—ANCILLARY SUIT BY RECEIVER.

Where the court and all parties treated the receivership suit as being also for the benefit of general creditors, who proved their claims therein, such suit by the receiver is ancillary and within the court's jurisdiction without regard to the citizenship of the parties.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 801; Dec Dig. ⬪264(3).]

3. CORPORATIONS ⬪180—STOCK CONTROL OF ANOTHER CORPORATION—TRUST RELATION—SUIT BY RECEIVER FOR ACCOUNTING.

A corporation which owns all or a majority of the stock of another corporation, which it thereby controls, is a trustee of the assets of the latter so far as relates to its creditors and bound to the exercise of the utmost good faith, and on allegations of fraud such creditors or a receiver representing them may maintain a suit for an accounting against the controlling corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 665–673; Dec. Dig. ⬪180.]

4. EQUITY ⬪66—SUIT BASED ON FRAUD—CONDITIONS PRECEDENT—TENDER.

When a complainant seeks to set aside a transaction for fraud, it is not necessary nor his duty to tender any sums which it may appear that the parties guilty of the fraud have disbursed, but it is sufficient if he offers to do equity.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 180–190; Dec. Dig. ⬪66.]

Appeal from the District Court of the United States for the District of Colorado; Robert E. Lewis, Judge.

Suit in equity by George W. Vallery, as receiver of the Colorado Midland Railway Company, against the Denver & Rio Grande Railroad Company and others. Decree for defendants, and complainant appeals. Reversed.

Clayton C. Dorsey and Pierpont Fuller, both of Denver, Colo. (Henry T. Rogers, Daniel B. Ellis, Lewis B. Johnson, George A. H. Fraser, and Gerald Hughes, all of Denver, Colo., and Joline, Larkin & Rathbone, of New York City, on the brief), for appellant.

Russell G. Lucas, of Denver, Colo. (Henry McAllister, Jr., and Elroy N. Clark, both of Denver, Colo., on the brief), for appellees.

Before SMITH and CARLAND, Circuit Judges, and AMIDON, District Judge.

CARLAND, Circuit Judge. In order to properly understand the questions which are before us for decision, a brief statement of the proceedings in the court below will be made. The complaint was filed March 16, 1915. April 5, 1915, the defendants filed motions to dismiss. October 26 and 27, 1915, the motions were argued and submitted. December 2, 1915, the plaintiff filed a motion for leave to file a supplemental complaint. January 17, 1916, an order was entered

⬪For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
236 F.—12

granting the motions to dismiss, and the complaint was dismissed accordingly. On the same day the plaintiff filed a motion to stay and vacate the order dismissing the complaint and for leave to file an amended complaint. February 8, 1916, the motions filed December 2, 1915, and January 17, 1916, were overruled. The plaintiff thereupon appealed from the order dismissing the complaint and also from the orders made on February 8, 1916. By stipulation the several appeals have been consolidated and are to be heard on one record.

[1] The points relied on to sustain the decree dismissing the complaint are as follows: (1) Want of jurisdiction; (2) the receiver had no title to maintain the action; (3) the facts stated in the complaint do not constitute a cause of action. The first two points may be considered together, as they are based upon the same facts and reasoning. There being no diversity of citizenship or a federal question in the case, the jurisdiction of the court and the right of the receiver to maintain the action must depend upon the fact as to whether this action is ancillary to and dependent upon the action brought by the Central Trust Company against the Colorado Midland Railway Company in which action the plaintiff was appointed as receiver. By stipulation we may refer to the record in said action, in determining the questions now under discussion. The original complaint in the receivership action was filed December 13, 1912, and the receiver was appointed the same day with the consent of the defendant therein. It cannot be denied but that the order appointed him receiver of all the property of whatever kind and description belonging to the Colorado Midland Railway Company, and authorized him to take possession of the same and to institute suits for the protection thereof.

It is claimed, however, that this order must be limited and construed with reference to the complaint in the action in which the order was made, and that as thus limited and construed it will appear that as the action was simply one to foreclose a mortgage, the court had no jurisdiction or authority to appoint a receiver of any property not subject to the lien of the mortgage, and that as this court held in Trust Co. v. D. & R. G. R., 219 Fed. 110, 135 C. C. A. 12, that the 7,371½ shares of stock of the Rio Grande Junction Railway Company in controversy in the present action was not subject to the lien of the mortgage, the receivership did not and could not extend to it. A third and supplemental complaint was filed in the receivership suit July 15, 1913, and the receivership was continued and extended under said amended and supplemental complaint with all the powers in the receiver that had theretofore been granted. By special order authority to bring the present suit was granted to the receiver. We do not deem it necessary or profitable to enter into a review of the decisions which the industry of counsel have presented in the briefs upon this question. It would seem that the application of elementary principles to the facts must determine that the receiver had a right to commence this action, and that the court had jurisdiction thereof. When the District Court made the order appointing the receiver, it had jurisdiction of the subject-matter and the parties. The complaint prayed for a receiver of all the property of the Midland Company, and the amend-

ed complaint prayed for a deficiency judgment which would seem to be inevitable from the allegations of the complaint. With the consent of the defendant Midland Company the court extended the receivership over all its property. The plaintiff in the action claimed a lien upon the stock in controversy in this action so that the order when it was made was not only in conformity to the desire of all parties to the action, but was also consistent with the pleadings. The order therefore was not void, and as against a collateral attack like that now made it must be held to have given the receiver title to maintain this action. Shields v. Coleman, 157 U. S. 168, 15 Sup. Ct. 570, 39 L. Ed. 660; Gunby v. Armstrong, 133 Fed. 417, 66 C. C. A. 627; Platt v. N. Y. & S. B. Ry. Co., 170 N. Y. 451, 63 N. E. 532; Miller v. Brown, 1 Neb. (Unof.) 754, 95 N. W. 797; Grand Trunk Ry. Co. v. Central Vermont Ry. Co. (C. C.) 85 Fed. 87; Horn v. Pere Marquette Ry. Co. (C. C.) 151 Fed. 626; 34 Cyc., pp. 164, 165.

[2] All parties before the trial court in the receivership suit, including general creditors, have treated the same as being for the benefit of general creditors as well as the bondholders. The District Court itself has so treated it and notice to all creditors to present claims has been given. The decision that the stock sued for in the present action was not covered by the lien of the mortgage did not determine that it did not belong to the Midland Company. Whether the Midland Company has any interest therein is the principal issue in the present action. If it has no interest therein, then the plaintiff will fail. We think it clearly appears from what has been said that the present action is ancillary to the receivership, and that the court had jurisdiction. We now turn to the complaint to ascertain whether it states a cause of action against the defendants or either of them. Upon this question little need be said.

[3] Laying aside the question of the present interest of the Midland Company in the 7,371½ shares of the Junction Company stock, let us examine the allegations of the complaint with reference to this stock prior to the sale thereof by the trust company to the Denver & Rio Grande. The complaint alleges that, beginning with the year 1907, the Denver & Rio Grande, controlling a majority of the directors of the Junction Company and one-half of the board of directors of the Midland Company, inaugurated a practice pursuant to which the Denver & Rio Grande and the Midland Company, instead of paying to the Junction Company the full amount of 30 per cent. of the gross earnings from business on the railway of the Junction Company, as required by the terms of the agreement between the parties, paid only such portion of said 30 per cent. as was sufficient to cover interest on bonds and other fixed charges and also to pay a dividend of 5 per cent. upon the outstanding stock of the Junction Company; that the payments of rentals at all times since 1907 have been much less than 30 per cent. of said gross earnings required to be paid as rentals to the Junction Company; that pursuant to this practice the unpaid balance required to make up a total payment from each of said companies for each year of 30 per cent. of said gross earnings has been carried as a charge in favor of the Junction Company, and

against each of said lessee companies and as an accumulated surplus in favor of the Junction Company in which the holders of the stock of said Company were entitled to participate; and that such surplus at the end of the fiscal year of 1912, to wit, November 30, 1912, amounted in the aggregate to $642,010.89; that by reason of the accrued rentals so uncollected the Denver & Rio Grande became indebted to the Junction Company in the sum of $503,160.96, and the Midland Company in the sum of $138,849.93, and the Midland Company by reason of its ownership of 7,371½ shares of the stock of the Junction Company became entitled to a dividend out of said surplus of $237,544, which exceeds in the sum of $98,694, the amount due by the Midland Company to the Junction Company for unpaid rentals for the use of said line of railway; that, at all times during and since the year 1907, the ratio of the gross earnings of the Denver & Rio Grande from the use of the Junction line to the gross earnings of the Midland Company therefrom for each of said years has far exceeded the ratio of the number of shares of stock of the Junction Company owned by the Denver & Rio Grande, to the number of shares of such stock owned by the Midland Company.

The complaint prays for an accounting between the Midland, the Junction, and the Denver & Rio Grande Companies, concerning this matter, and that the amount of dividends, if any, over and above the rentals due from the Midland Company, be ascertained, and the plaintiff have judgment therefor if any such balance exists. We are unable to perceive any reason why the creditors of the Midland Company are not entitled to this, providing the allegations of the complaint are true, and for all purposes of this appeal they must be so considered.

We now come to a consideration of the allegations of the complaint with reference to the acquirement of title by the Denver & Rio Grande to the 7,371½ shares of stock of the Junction Company. The complaint, when much detail of statement is laid aside, substantially charges that the Denver & Rio Grande Company about June 15, 1911, having obtained control of the directorate of the Midland Company, assumed full control of said company and its business, and being in full control, as aforesaid, entered into a scheme to obtain for its own use and benefit at an inadequate price said 7,371½ shares of the Junction Company's stock, then owned by the Midland Company, and thereby fraudulently and in breach of its trust to despoil the Midland Company thereof; that at this time the Midland Company was insolvent and the stock of the Junction Company owned by it was its only valuable free asset; that pursuant to said fraudulent scheme the Denver & Rio Grande caused the directors of the Midland Company at a meeting held on June 28, 1911, to adopt a resolution authorizing the borrowing for said Midland Company of not exceeding $575,000; that shortly thereafter the Midland Company under the direction and control of the Denver & Rio Grande made a loan from the Equitable Trust Company of New York, and issued therefor three promissory notes payable on demand without grace in the sums of $180,000, $100,000, and $200,000, respectively. The payments of said notes were secured by the pledge to the Equitable of said 7,371½ shares of the Junction

Company under severe and harsh conditions; that the Denver & Rio Grande in the fall of the year 1912, after said loans were made and the notes issued by false statements, which are detailed in the complaint, caused the Equitable to immediately demand payment of the notes, at a time when it it was difficult for the Midland Company to respond, and also in the same way caused the Equitable to sell said shares of the Junction Company upon five days' notice; that the Denver & Rio Grande being in full control of the Midland Company and dictating all its acts was a party to the demand for payment of the notes and the sale of said stock, and, instead of trying in any way to obtain further time for the payment of the notes or to protect from sale and forfeiture of said shares of stock, took such action as prevented those who were endeavoring to pay off the notes from paying the same or preventing a sale of said stock, and at the sale by the Equitable bid in the 7,371½ shares of Junction stock for the sum of $405,432.50, it being alleged in the complaint that the stock at the time of the purchase thereof by the Denver & Rio Grande including the withheld dividends thereon, was worth not less than $1,000,000.

Under the allegations of the complaint, the Denver & Rio Grande, at the time of the several transactions in regard to the pledge and sale of this stock, was a trustee of the assets of the Midland Company so far as the creditors of the company were concerned, and, admitting that the Denver & Rio Grande owned all the stock of the Midland Company, it was bound to act in the utmost good faith towards the creditors of the latter. Northern Pacific Ry. Co. v. Boyd, 228 U. S. 482, 33 Sup. Ct. 554, 57 L. Ed. 931; Central Improvement Co. v. Cambria Steel Co., 210 Fed. 696, 127 C. C. A. 184, affirmed in 240 U. S. 166, 36 Sup. Ct. 334, 60 L. Ed. 579; Louisville Trust Co. v. Louisville, etc., Ry. Co., 174 U. S. 674, 19 Sup. Ct. 827, 43 L. Ed. 1130; Kansas City Southern Ry. Co. v. Guardian Trust Co., 240 U. S. 166, 36 Sup. Ct. 334, 60 L. Ed. 579; Barrie v. United Rys. Co., 125 Mo. App. 96, 102 S. W. 1078; Meeker v. Iron Co. (C. C.) 17 Fed. 48; Sutton Mfg. Co. v. Hutchinson, 63 Fed. 496, 11 C. C. A. 320; Sweeny v. Grape Sugar Co., 30 W. Va. 443, 4 S. E. 431, 8 Am. St. Rep. 88; Noyes on Intercorporate Relations, § 124; Cook on Corporations, vol. 3, § 658; Thompson on Corporations, vol. 7, §§ 8502, 8503.

It was the duty of the Denver & Rio Grande to make every effort to prevent a foreclosure and sale of the pledged stock. Canton Roll & Machine Co. v. Rolling Mill Co. of America, 168 Fed. 465, 93 C. C. A. 621; Jackson v. Ludeling, 21 Wall. 616, 22 L. Ed. 492; Clark and Marshall on Priv. Corp. vol. 31, § 763. As to the conduct of the Denver & Rio Grande in the pledging and purchase of the stock in question being inequitable, the following cases are in point: Farmers' Loan & Trust Co. v. New York & N. Ry. Co., 150 N. Y. 410, 44 N. E. 1043, 34 L. R. A. 76, 55 Am. St. Rep. 689; De Neufville v. New York & Northern Ry., 81 Fed. 10, 26 C. C. A. 306; Alexander v. Relfe, 74 Mo. 495; Jackson v. Ludeling, supra. A court of equity disregards the mere frame work behind which fraud is sought to be concealed by looking through the same to the actual transaction.

[4] This is not a case where equity would require the plaintiff to

make a tender in money of the amount paid by the Denver & Rio Grande at the foreclosure sale of the stock. Fraud is alleged, and the plaintiff is but an officer of the court seeking to obtain property belonging to the Midland Company for the benefit of its creditors. To require the plaintiff to make a tender might defeat the action. When a plaintiff seeks to set aside a transaction for fraud, it is not necessary or his duty to tender any sums which it may appear that the parties guilty of the fraud have disbursed. The complaint offers to do equity, and, the whole case being before a court of equity, if the plaintiff is granted any relief the court at the same time may make the granting of the same conditional upon the doing of equity by the plaintiff, to the defendants. Just what form the relief will take, if any is granted, will depend upon the facts when they appear. It is sufficient now to say that the facts pleaded entitle the plaintiff to a hearing as to their truth.

We have examined the exhaustive brief of counsel for the defendants, but we think a large portion of the same would be more in point if the case was here on pleadings and proofs. In regard to the appeals from the order which denied an amendment to the bill, it may be doubted whether there was any error in granting the same considering the time in the progress of the suit when the motion was made, and also that it was an application addressed to the sound discretion of the trial court; however, as we will reverse the judgment dismissing the complaint, we think it right, in order that the trial court may feel itself free as to any future amendments, to reverse the order refusing to grant the amendment.

The judgment dismissing the complaint and the other orders appealed from are reversed, and the case remanded, with instructions to the trial court to overrule the motion to dismiss the complaint, allowing the defendants to answer the same if they are so advised.

SMITH, Circuit Judge. I concur in all of the foregoing opinion, except in the reversal for failure to allow the filing of a supplemental petition as asked December 2, 1915, and the refusal of leave to file an amended complaint on the application of January 17, 1916.

In view of the history of this case including the history of Central Trust Co. v. Denver & Rio Grande R. Co., 135 C. C. A. 12, 119 Fed. 210, and the fact that the complaint was filed March 16, 1915, and the motion to dismiss was filed within three weeks thereafter, and said motion to dismiss was not heard until October following, and the application to file a supplemental bill was not filed until more than a month after the submission, and the application to file an amended bill was not filed until more than two months after the motion to dismiss was argued and submitted, it was discretionary with the trial court to allow or refuse the applications. 1 Enc. U. S. Sup. Ct. Repts. 303. And such discretion was not abused. I do not mean that, in view of the reversal, the District Court could not grant such applications if now renewed, but there is no reversible error in having refused them at the time made.