951

SAETRE et al. v. CHANDLER.

CHRISTENSON v. F. E. SATTERLEE CO.
et al.

Nos. 9352, 9374.

Circuit Court of Appeals, Eighth Circuit.
April 25, 1932.

Ray Quinlivan, of St. Cloud, Minn. (Alex Janes, of St. Paul, Minn., and P. L. Solether, Claude G. Krause, and Glen S. Stiles, all of Minneapolis, Minn., on the brief), for appellants Saetre, and others.

F. H. Peterson, of Moorhead, Minn., for appellant Christenson.

N. F. Field and Cyrus A. Field, both of Fergus Falls, Minn., for appellant Melby.

Thomas Vennum, of Minneapolis, Minn. (Gates A. Timerman, of Minneapolis, Minn., on the brief), for appellee Chandler, as receiver.

Before VAN VALKENBURGH, Circuit Judge, and DAVIS, District Judge.

VAN VALKENBURGH, Circuit Judge.

January 23, 1929, in the District Court of the United States for the District of Minnesota, receivers were appointed for the Diamond Motor Parts Company at the suit of F. E. Satterlee Company, a creditor. The receivers originally appointed were M. D. Chandler, appellee herein, F. E. Satterlee, and E. J. Smith. Subsequently Satterlee and Smith resigned and were discharged, leaving appellee Chandler as sole receiver. July 9, 1931, Receiver Chandler filed in the receivership suit a petition for order assessing stockholders. This petition of the receiver was granted and an assessment of 100 per cent. ordered September 30, 1931. It is from this order that the above-entitled appeals are taken.

In cause No. 9352 twenty-two assignments of error are relied upon. They proceed from several defendant stockholders, and contain a number of duplications and restatements of the same proposition in different form. The points really argued and presented for the court's consideration are therefore reduced to four:

1. That the proof tendered by the receiver is wholly insufficient to warrant or justify any order assessing stockholders.

2. The court erred in granting the motion of the receiver to strike the testimony of Thomas Kernan, a witness for appellants, at the close of the hearing.

3. Section 3 of article 10 of the Constitution of the State of Minnesota provides that: "Each stockholder in any corporation, excepting those organized for the purpose of carrying on any kind of manufacturing or mechanical business, shall be liable to the amount of stock held or owned by him." And it is urged that the articles of incorporation of the Diamond Motor Parts Company are such as to bring that company within the exception.

4. Irrespective of the foregoing assignments, "there should have been no order of assessment of stockholders for the reason that by the 1930 amendment to the Constitution of the State of Minnesota the rights of the Receiver and all creditors of the corporation to pursue a superadded liability against stockholders no longer exist and are wholly lost."

In cause No. 9374 but one error is assigned, to wit: "The Court erred in holding that the Articles of Incorporation of the defendant company did not disclose that it was exclusively a manufacturing and mechanical corporation and that its stockholders were exempt from double liability under the provisions of the Constitution of the State of Minnesota." In this case the regularity and sufficiency of the proceedings otherwise are not disputed.

The remedy for the establishment and enforcement of the constitutional liability of stockholders is provided by sections 8025 and 8026 of Mason's Minnesota Statutes for 1927, and by section 8027 of said statutes as amended by chapter 205, § 1, of the Minnesota Laws for 1931, as follows:

"8025. *Enforcement of stockholders' liability—Hearing—Notice of*—Whenever it shall be made to appear by the petition of a receiver or assignee of a corporation, or of any creditor thereof whose claim has been filed, that any constitutional, statutory, or other liability of stockholders or directors or both exists, and that it is necessary to resort to the same, the court shall appoint a time for hearing, not less than thirty nor more than sixty days thereafter, and order such notice thereof to be served on each person against whom such liability is claimed in the same manner a summons is served in a civil action, and said notice shall also be published as the Court shall order. That such notice shall specify in a general way the nature of

the liability claimed in the petition and the amount thereof against the person upon whom it is so served. Whenever the receiver is not the petitioner, personal notice shall be given to him.

"8026. Same—Hearing—Evidence—Order for Assessment—Upon such hearing, after proof of due service of notice, the court shall receive and consider such evidence by affidavit or otherwise as may be presented by the receiver, or by any creditor, officer, or stockholder, appearing in person or by attorney, but such evidence shall be the best available under the circumstances of each case, upon the following points:

"1. The nature and probable extent of the indebtedness of the corporation;

"2. The probable expense of the receivership;

"3. The probable amount of available assets;

"4. The parties liable as stockholders, the nature and extent of the liability of each, and their probable solvency or responsibility.

"If it appears that the available assets, or such amount as may be realized therefrom within a reasonable time, will be insufficient to pay such expenses and indebtedness in full and without delay, the court shall order a ratable assessment upon all parties liable as stockholders, or upon account of any stock of such corporation, for such amount, proportion, or percentage of such liability upon or on account of each share of such stock as it shall deem proper, considering the probable solvency and responsibility of the stockholders and the probable expense of collecting such assessment, and shall direct payment of the amount so assessed against each share of such stock to the assignee or receiver, within the time specified in such order. That no assessment shall be made against any stockholder for any liability of any corporation incurred outside of the scope of the powers of such corporation, or of the officers thereof incurring the same, unless such stockholder shall have been found by the court to have consented thereto.

"8027. Such order shall authorize and direct the assignee or receiver to collect the amount so assessed, and, on failure of any one liable to such assessment to pay the same within the time prescribed, to prosecute an action against him, whether resident or nonresident, and wherever found. Such order shall be conclusive as to all matters relating to the amount, propriety, and necessity of the assessment, against such parties as

shall have been served with notice of the Receiver's Petition for Assessment as provided in Section 8025, General Statutes of 1923, as amended by Section 273, Section 1, Session Laws of Minnesota for 1925, except that the defense of ultra vires set forth in Section 6646 may be interposed by any stockholder in any suit for any such assessment and if maintained shall diminish the liability of such stockholder in the proportion that the liabilities determined to be ultra vires shall bear to the total liabilities of such corporation."

■ As one feature of the alleged failure of proof it is claimed that it was not shown that the notice to stockholders was given as provided by section 8025, and therefore that the court was without jurisdiction in the premises. July 10, 1931, the court appointed August 31, 1931, as the time for hearing of said petition for assessment of stockholders, which was not less than thirty nor more than sixty days after the date of appointment. Subsequently, being advised by affidavit of counsel for the receiver that, because of the great number of stockholders—approximately five thousand—it would be impossible to notify all the stockholders within the time specified, the court, on August 18, 1931, ordered that upon the hearing on August 31, 1931, the matter would be continued to the 10th day of September, 1931, and that a notice of this order should be sent by mail to each stockholder at his last known place of address not later than August 22, 1931. September 10th was a date sixty-one days after the original date of appointment. This was a procedure adopted for the convenience of stockholders, in the interest of due notice, and in substantial compliance with the statutory provision. The statute does not require the matter to be heard within sixty days. It does require that a time for the hearing shall be appointed within that time. Thereafter the hearing must depend upon the necessities of the situation, including the convenience of the court, and that of the parties, and the demands of justice in general.

■ But it is insisted that there was no proof of due service of notice. Prior to the hearing the record shows that there were filed affidavits of sheriffs and others certifying to service upon approximately fifteen hundred resident stockholders; an affidavit of publication of notice to all stockholders in accordance with the order of court; and an affidavit of mailing notice to thirty-five hundred, shown by the receiver to be nonresident stockholders in an exhibit attached to his

verified petition for order of assessment. On this exhibit were shown the names of all stockholders with their addresses and the number of shares of stock held by each. The facts respecting these forms of service, as shown by the files and records in the receivership case, are stipulated by the parties, appellants merely making the reservation that, by joining in the execution of the stipulation, no admission should be deemed as made on behalf of any stockholder that service was in fact made as claimed or asserted. But we do not find in record or argument any substantial effort to discredit or disprove the service shown by the files. The difficulty of the receiver's task appears upon the face of the record, and we think this statutory duty, as further enjoined by court order, was discharged with painstaking care and in full substantial compliance with legal mandate.

Coming now to the question of sufficiency of proof, it is to be observed that the court is permitted to receive evidence by affidavit or otherwise. The language of the statute on this point is significant. The matters to be determined are: (1) The nature and probable extent of the indebtedness of the corporation; (2) the probable expense of the receivership; (3) the probable amount of available assets; and (4) the parties liable as stockholders, the nature and extent of the liability of each, and their probable solvency or responsibility. As said in Drovers' State Bank v. Drovers' Cattle Loan & Investment Co., 167 Minn. 283, 208 N. W. 997, 998, "the degree and kind of proof must be left very largely to the requirements of each case and the discretion of the trial judge." The ultimate and issuable fact to be found by the court is whether it is necessary and proper that an assessment of a given amount shall be levied against each share of stock. "No person has a vested right to have his controversies determined by existing rules of evidence." Straw & Ellsworth Mfg. Co. v. Kilbourne Boot & Shoe Co., 80 Minn. 125, 83 N. W. 36, 40. The case last cited further holds that this examination of the condition of the corporate affairs, "at most, must be merely tentative on all of the questions investigated."

It is repeatedly held by the Supreme Court of Minnesota, in passing upon proceedings under this assessment statute, that the court deals in the main with probabilities. Finch, Van Slyck & McConville v. John F. Vanasek et al., 132 Minn. 9, 155 N. W. 754, 755; Farwell, Ozmun, Kirk and Co. v. Goodhue County Co-operative. Co., 160 Minn. 64, 199 N. W. 436; Hanover State Bank v. Barry et al., 170 Minn. 445, 213 N. W. 36; Merchants' & Manufacturers' State Bank v. Dyste et al., 173 Minn. 436, 217 N. W. 483, 484.

In the last-named case the court said: "In view of the preliminary and largely administrative character of an order assessing stockholders, the statutory requirement of evidence, 'the best available under the circumstances of each case,' is not to be strictly construed as against the wide discretion vested in the trial judge. The inquiry involves mainly a comparison of assets and liabilities. As to the former, it necessarily proceeds largely upon estimate and prediction, which are matters of opinion. Hanover State Bank v. Barry, 170 Minn. 445, 213 N. W. 36; Drovers' State Bank v. Drovers' Cattle L. & Inv. Co., 167 Minn. 283, 208 N. W. 997. The statute does not introduce any new limitation, but, if anything, extends somewhat the ordinary rules of evidence so as to permit a consideration of each case upon its own merits and from the standpoint of the best evidence reasonably available concerning it."

The following language from Finch et al. v. Vanasek, supra, is illuminating: "The stockholders are not entitled to a jury trial in a proceeding of this kind. It was intended by the statute that the proceeding should be summary and without formal pleadings, and it is not controlled by all the forms usually incident to judicial procedure. The court under the statute deals in the main with probabilities, and is not authorized to determine any fact, other than that of insolvency and the amount of the assessment to be made, which in any way precludes the stockholders in a subsequent action brought to enforce the assessment. * * *

"The assessment is but the foundation for the proceedings subsequently to be brought for collection thereof, if voluntary payment be not made, and when paid is applied under the order of the court. If a surplus remains after payment of debts and expenses, it is returned to the stockholders. Straw & Ellsworth Mfg. Co. v. L. D. Kilbourne Boot & Shoe Co., supra. In view of this fact, this court should interfere with an assessment only when palpably beyond all reasonable necessity."

And this further from Farwell et al. v. Goodhue County Co-operative Co., supra: "In the assessment proceeding the necessity and amount of the assessment is determined.

955

In determining the amount the court deals to some extent with probabilities. From the facts before it it determines, so nearly as it can, what the levy should be. If in the course of administration it is found that so large a levy is unnecessary, a proper adjustment is made."

The receiver showed that two hundred and thirty-one claims, amounting to $450,000, had been filed and allowed in the sum of $345,878.10. Upon these a dividend of 25 per cent. had been paid. Preferred claims aggregating $2,000 had been paid in full. He had on hand $45,000 in cash. Of this $10,000 was held on special deposit as security for the payment of a possible judgment in an action pending in Chicago, Ill. Not more than $1,000 could be realized from remaining assets. The expenses of administration would reach $25,000. It thus appeared that it would require approximately $240,000 from assessment of stockholders in order that creditors might be paid in full. The receiver testified further that there was stock of the par value of $2,100,000 outstanding. A list of five thousand stockholders, with the number of shares of stock owned by each, was attached to the verified petition for assessment. The receiver stated that two thousand of these stockholders were residents of Minnesota, of whom nearly 20 per cent. could not be found. The remaining three thousand were nonresidents. Of the five thousand, about 20 per cent. held more than five hundred shares each; 30 per cent., between one hundred and five hundred shares each; and 50 per cent., less than one hundred shares each. The par value of the stock is $1 per share. The receiver, a banker of experience in determining financial responsibility, testified that he had analyzed the list of stockholders in Minneapolis and vicinity, and that his investigation included correspondence with stockholders generally. Based upon experience, he was ██ the opinion that considerably over half of the stockholders would be unable to pay any assessment. His estimate was that an assessment of 100 per cent. might yield as much as $200,000.

From the foregoing the nature and probable extent of the indebtedness was known from the allowance of the claims filed; the probable expense of the receivership, and the probable amount of available assets were shown with exceptional certainty. Thus the first three points, to which the statute requires the best available evidence under the circumstances of the case to be directed, were sufficiently established. The parties liable as stockholders were made known, and the nature and extent of their liability appeared from the amount of their stock holdings. The contention is that there is no sufficient showing as to their probable solvency or responsibility. The receiver conceded that this was largely speculative. In the nature of the case it was insusceptible of exact determination. Such the statute does not contemplate. Assessments are not imposed except upon stockholders of insolvent concerns. To make anything like an exhaustive inquiry into the financial condition of five thousand stockholders, three thousand of whom are nonresidents, would entail a prohibitive burden of time and expense upon the receiver of an insolvent estate and would defeat the very object of the legislation. The responsibility of the stockholder can rarely be ascertained with certainty except at the end of expensive litigation, which, in the case of small stockholders, would exhaust the net amount recovered. The receiver obtained a very good cross-section of the situation from his investigation of the financial condition of a typical class. This is all that the statute contemplates under such circumstances, and we think the proofs adduced were amply sufficient to support the assessment order. If a surplus results it is ratably returned to the contributing stockholders. The order of assessment is conclusive only as to matters relating to the amount, propriety, and necessity of the assessment. All other defenses, including that of ultra vires as affecting the indebtedness of the estate, are preserved to the stockholder in a suit brought to collect the assessment.

[8, 9] It is conceded that the articles of incorporation furnish the sole test in determining the nature of a corporation's business within the terms of section 3 of article 10 of the Minnesota Constitution. Extrinsic evidence is inadmissible to show that a corporation actually confines its business to manufacturing, if, by its articles, it is authorized to engage in a business other than manufacturing. Arthur v Willius, 44 Minn. 409, 46 N. W. 851, 853; Graff v. Minnesota Flint Rock Co., 147 Minn. 58, 179 N. W. 562; First National Bank v. Winona Plow Co., 58 Minn. 167, 59 N. W. 997; Merchants' Nat'l Bank v. Minnesota Thresher Manufacturing Co., 90 Minn. 144, 146, 147, 95 N. W. 767; Sibley County Bank v. Crescent Milling Co., 172 Minn. 394, 396, 215 N. W. 521, 522. And it must fairly appear from the articles of incorporation that the corporation was organized for the exclusive purpose of engaging in manufacturing, and such in-

cidental business as may be reasonably necessary to effectuate the purpose of its organization, in order that stockholders may fall within the exception to the general rule holding them liable, to the amount of stock held or owned by them, for the debts of their corporation. Merchants' National Bank v. Minnesota Thresher Mfg. Co., supra. As said in Arthur v. Willius, supra: "The organizers of a corporation fix the terms of their articles of association for themselves. These declare to the public what kinds of business the corporation proposes to engage in, and the public, which cannot definitely know which of these various kinds of business the corporation has actually engaged in, deal with it and give it credit upon the basis of their own rights and the liability of stockholders as indicated by the nature of the corporation as declared in the articles themselves."

█ The construction of this constitutional provision by the Supreme Court of Minnesota is, of course, binding upon us. City of Campbell, Mo., v. Arkansas-Missouri Power Co. (C. C. A. 8) 55 F.(2d) 560, 563.

█ The second point relied upon by appellants is the action of the court in granting the motion of the receiver to strike out the testimony of Thomas Kernan, a witness for appellants. The testimony stricken tended to show, as contended by appellants, that the Mutual Company—

"(a) Had never been engaged in any business; that it had no business to sell;

"(b) That it had no liabilities;

"(c) That the property which it owned consisted of a parcel of real estate with a manufacturing plant located thereon and some blue prints and dies of no value, formerly used in the manufacture of automobiles and parts;

"(d) That the building and real estate located thereon were useful for no purpose other than manufacturing."

This testimony was offered in attempted explanation of the nature of the purpose for which the Diamond Motor Parts Company was incorporated. The charter of the Diamond Company contains the following statement of the general nature of its business: "The general nature of its business shall be to manufacture and sell automotive repair and replacement parts, to purchase, acquire and take over the entire business and property and all of the assets and liabilities including both real and personal property and all properties of every kind, nature and descrip-

tion belonging to the Mutual Motors and Manufacturing Company now located at and in the City of St. Cloud in the State of Minnesota and to carry on the business of manufacturing said automotive repair and replacement parts in the plant which is now owned by the said Mutual Motors and Manufacturing Company at St. Cloud, Minnesota, and to issue in payment of the purchase price of said property the sum of Two Hundred Fifteen Thousand and no/100 ($215,000.00) dollars of the capital stock of this corporation the same to be distributed and issued to the respective stockholders of the said Mutual Motors and Manufacturing Company according to the respective interests in said Mutual Motors and Manufacturing Company; and that said corporation may and shall do everything necessary and essential to be done to enable it to fully perform, carry out and fulfill the general purposes of its organization as herein declared."

The excluded offer ignores the rule, established by the Minnesota court of last resort, that the test of stockholders' immunity is, not what a corporation actually does, but what, by its charter, it is authorized to do. This testimony of Thomas Kernan was, therefore, incompetent and was properly excluded. Appellee's offer of the articles of incorporation of Mutual Motors & Manufacturing Company was also rejected upon the same ground. These rulings of the court were expressly approved by counsel for appellant Walter J. Melby in a separate brief as follows: "Not only from a legal but a practical standpoint, neither the authorized or actual business of the preceding company, Mutual Motors and Manufacturing Company, has any bearing whatever on our problem, and the learned trial court properly sustained objection to the introduction of the articles of incorporation of such prior company, and also on motion struck out testimony as to the business actually carried on by the two companies."

█ We come now to what must be considered the main contention of appellants, to wit, that the articles of incorporation of the Diamond Company show that its business was exclusively that of manufacturing. Many cases of the Supreme Court of Minnesota are cited by both parties. Most of these cases, differing widely, as they do, in the facts considered, are helpful chiefly as they disclose the principles of construction adopted. We find no serious departure from those principles in the conclusions reached under the facts of each particular case. Under the con-

stitutional provision, as it existed when the contractual liability sought to be enforced was created, the liability of stockholders for corporate debts to the amount of the stock owned or held by them was the general rule — the immunity of those organized for the purpose of carrying on any kind of manufacturing or mechanical business was the exception. The general rule of law is that the burden lies upon one seeking to bring himself within such an exception. This principle is thus well expressed by Mr. Justice Mitchell in Arthur v. Willius, supra: "The general policy of the state, as expressed in the constitution, being that stockholders of corporations should be individually liable to the amount of their stock, we think that the exception made to this rule should be strictly construed."

We do not construe the language of the court in Sibley County Bank v. Crescent Milling Company, supra, that "as to manufacturing corporations, nonliability is just as definitely the constitutional rule and liability the constitutional exception," to run counter to the general rule in this respect. To do so would be to convert an exception into a coordinate with the general policy of the state as expressed in the Constitution.

The Minnesota case which, in its facts, more nearly approaches the situation existing in the case at Bar, than do any of the other cases cited by either party, is State v. Minnesota Thresher Mfg. Co., 40 Minn. 213, 41 N. W. 1020, 1023, 3 L. R. A. 510. This was an action in the nature of quo warranto, in which it became necessary to determine whether or not the corporation was organized under the law of 1873, which involved the constitutional provision excepting from liability for corporate debts corporations engaged exclusively in manufacturing. Thus the decision of this case becomes especially pertinent because one of the tests of immunity from stockholders' assessment for corporate debts is the ability of their corporation to withstand the attack of the state by quo warranto on the ground of failure to conform to the requirements of the statute governing the incorporation of concerns engaged exclusively in manufacturing. The articles of incorporation of the Minnesota Thresher Manufacturing Company provided as follows: "The objects for which this corporation is formed are the purchase of the capital stock, evidences of indebtedness issued by it, and the assets of the Northwestern Manufacturing & Car Company, a corporation existing under the laws of the state of Minnesota, or any portion of said capital stock, evidences of indebtedness, or assets, and the manufacture and sale of steam engines of all kinds, farm implements and machinery of all kinds, and the manufacture and sale of all articles, implements and machinery of which wood and iron, or either of them, form the principal component parts, and the manufacture of the materials therein used."

In passing adversely to the thresher company, Mr. Justice Mitchell, speaking for the Minnesota Supreme Court, said:

" * * * The articles of association state that the corporation was formed under the act of 1873 relating to manufacturing corporations, but this does not make it so. To determine its actual character, we must look to the objects of its formation, and the nature of its business, as stated in the articles themselves.

" * * * With this construction of the law in mind, it is not difficult, on examination of respondent's articles of association, to determine to what class it belongs. One of the declared objects of its formation is to purchase the capital stock and evidences of indebtedness of the car company, a business in no way incident to or properly connected with that of manufacturing. The contention of counsel to the contrary cannot be seriously entertained for a moment. If a manufacturing corporation desires to buy the plant of another corporation formerly engaged in the same business, that is legitimate, and if, in order to get it, it becomes necessary to buy with it some other property, not needed for nor connected with the manufacturing business, this also would be permissible, if done as incidental to the main purpose of securing the plant; but no such reason or excuse existed for buying the stock and indebtedness of the car company. Indeed, it would be difficult to imagine anything more foreign to or inconsistent with a legitimate manufacturing business than for a corporation to invest all its capital in the stock and indebtedness of another and insolvent corporation."

About fifteen years later, in an action brought to enforce double liability against the stockholders of this same corporation, the same conclusion was reached. Merchants' National Bank of St. Paul v. Minnesota Thresher Mfg. Co., 90 Minn. 144, 95 N. W. 767. And this construction was approved by the Supreme Court of the United States in Bernheimer v. Converse, 206 U. S. 516, 525, 27 S. Ct. 755, 51 L. Ed. 1163. The general nature of its business as stated in the purpose clause of the articles of incorporation of

the Diamond Motor Parts Company is divided by counsel for appellants as follows:

"Clause One: The general nature of its business shall be to manufacture and sell automotive repair and replacement parts.

"Clause Two: to purchase, acquire and take over the entire business and property and all of the assets and liabilities including both real and personal property and all properties of every kind, nature and description belonging to the Mutual Motors and Manufacturing Company now located at and in the City of St. Cloud in the State of Minnesota.

"Clause Three: and to carry on the business of manufacturing said automotive repair and replacement parts in the plant which is now owned by the said Mutual Motors and Manufacturing Company at St. Cloud, Minnesota."

Thus two distinct purposes are stated, i. e.: (1) To manufacture and sell, etc., and (2) to purchase and acquire, etc. It is the contention of appellants that clause 3 "links together" the first two clauses, making the second, in effect, incidental to the first. They concede that "without Clause Three it could be argued that the corporation, under the provisions of Clause Two might be free, after acquiring the business and property of the Mutual Company, to use it for any purpose it might see fit or to dispose of it." This linking and limiting process is said to be effected by the provision that the Diamond Company purposes to carry on the business of manufacturing automotive repairs and replacement parts in the plant then owned by the Mutual Company. But this disposes only of a part of the property acquired from the Mutual Company. The Diamond Company engages "to purchase, acquire and take over the entire business and property and all of the assets and liabilities including both real and personal property and all properties of every kind, nature and description," belonging to said Mutual Company. Presumably the plant was a part of the property included. If it comprised the entire business and property purchased and taken over that would have been simply and naturally stated. The language used negatives, rather than permits, that construction. After assigning the plant to the business of manufacturing of automotive repair and replacement parts, the Diamond Company might still be free to use the remaining business, property, and assets, both real and personal, of every kind, nature, and description, acquired from the Mutual

Company, "for any purpose it might see fit or to dispose of it." This is not a "strained or hyper-technical construction," but the natural meaning of the language employed. Finally it is contended that the final phrase of the purpose clause, "that said corporation may and shall do everything necessary and essential to be done to enable it to fully perform, carry out and fulfill the general purposes of its organization as herein declared," has a curative effect. But it is to be noted that the word "purposes" not "purpose" is here used, thereby recognizing the dual nature of the business contemplated. We think a fair construction of the articles of incorporation of the Diamond Company does not limit its business exclusively to manufacturing, that appellants have not sustained the burden of establishing their exemption from liability for corporate debts, and that the conclusion of the trial court is sustained by the record.

But the final insistence of appellants is that there should have been no order of assessment because the amendment to section 3 of article 10 of the Minnesota Constitution proclaimed as adopted and ratified November 20, 1930 (Bank of Dassel v. March, 183 Minn. 127, 131, 235 N. W. 914, 916), conferred upon the Legislature "power from time to time to provide for, limit and otherwise regulate the liability of stockholders or members of corporations * * * or associations, however organized," providing, however, for a continuing liability of stockholders in banking or trust corporations or associations for the period therein named. The liability of stockholders in the Diamond Company accrued prior to the adoption of this amendment to the Minnesota Constitution. That the relation of a stockholder to creditors of a corporation is a contract relation cannot be successfully disputed. Harrison v. Remington Paper Co. (C. C. A. 8) 140 F. 385, 3 L. R. A. (N. S.) 954, 5 Ann. Cas. 314; Bernheimer v. Converse, 206 U. S. 516, 27 S. Ct. 755, 51 L. Ed. 1163; Converse v. Hamilton, 224 U. S. 243, 32 S. Ct. 415, 56 L. Ed. 749, Ann. Cas. 1913D, 1292; Henley v. Myers, 215 U. S. 373, 30 S. Ct. 148, 54 L. Ed. 240; First Nat'l Bank v. Hawkins, 174 U. S. 364, 372, 19 S. Ct. 739, 43 L. Ed. 1007; Whitman v. Oxford Nat'l Bank, 176 U. S. 559, 20 S. Ct. 477, 44 L. Ed. 587.

It would seem that any such attempted state abridgement of vested contractual rights would fall within the inhibition of article 1 of section 10 of the Federal Con-

stitution as impairing the obligation of contracts. But we do not find it necessary to base our conclusion upon that ground. The constitutional amendment relied upon does not purport to be self-enforcing, nor itself to alter the terms of existing constitutional provisions, in advance of action by the Legislature upon which it conferred power to provide for, limit, and otherwise regulate the liability of stockholders. In exercise of the power thus conferred, the Minnesota Legislature enacted the following law prescribing the liability of stockholders:

"Be it enacted by the Legislature of the State of Minnesota:

"Section 1. *Stockholders liabilities.*— Except as provided by Section 7465, Mason's Minnesota Statutes of 1927, no stockholder or member of any corporation or of any co-operative corporation or association, however or whenever organized, except a stockholder in a banking or trust corporation or association, shall be liable for any debt of said corporation, co-operative corporation or association.

"Sec. 2. *Not to affect existing liability.* —This act shall not affect any existing liability." Laws Minn. 1931, c. 210.

This act was approved April 18, 1931. It expressly preserves all existing contractual liabilities such as those sought to be enforced by this assessment order.

We find no reversible error in the record, and the order appealed from is affirmed.