BADGER et al. v. HOIDALE et al.
(two cases).

Nos. 10722, 10723.

Circuit Court of Appeals, Eighth Circuit.

Feb. 18, 1937.

Loring M. Staples, of Minneapolis, Minn. (Armin M. Johnson and Cobb, Hoke, Benson, Krause & Faegre, all of Minneapolis, Minn., on the brief), for appellants.

Karl H. Covell, of Minneapolis, Minn. (Charles B. Carroll, of Minneapolis, Minn., on the brief), for appellees.

Before GARDNER, THOMAS, and FARIS, Circuit Judges.

GARDNER, Circuit Judge.

These are two appeals from orders which adjudged a 100 per cent. stockholders' liability assessment against the stockholders of two Minnesota corporations. The questions presented are stated by counsel for appellants as follows: First, were the stockholders of the Down Town Realty Company relieved of an additional liability as stockholders by the adoption of the constitutional amendment; and, second, did the mere adoption of the constitutional amendment prior to any legislation authorized thereby, prevent the stockholders of the corporation from becoming liable for the superadded liability when the corporation assumed all the liabilities of the company on December 19, 1930?

The pertinent facts chronologically stated are as follows: On May 20, 1920, the Down Town Realty Company was incorporated under the laws of the State of Minnesota. At that time the Constitution of Minnesota provided for a so-called double liability or stockholders' liability of such a corporation. On November 24, 1930, an amendment was adopted which, among other things, provided that "the Legislature shall have power from time to time to provide for, limit and otherwise regulate the liability of stockholders." Const.Minn. art. 10, § 3. On April 18, 1931, the Legislature passed a statute which in effect provided that no stockholders of any corporation (of the kind here involved) should be liable for any debts of such corporation, but with a saving clause as to any existing liability. Laws Minn.1931, c. 210. On March 15, 1928, the Down Town Realty Company incurred indebtedness to certain creditors whose claims are yet unpaid.

On December 17, 1930, the Down Town Realty Corporation was incorporated under the laws of Minnesota, and two days thereafter it took over all the assets and assumed all the liabilities of the Down Town Realty Company, some of which liabilities have not yet been paid. To avoid confusion, we shall refer to the Down Town Realty Company as the old company, and the Down Town Realty Corporation as the new company.

In June, 1935, creditors of the old company whose obligations were incurred in 1928, brought separate suits in the United States District Court against each company, asking for the appointment of a receiver on the ground that each defendant was insolvent, and asking that the receiver be directed to enforce the liability of the stockholders of each corporation. Each company defended on the ground that an amendment to the Minnesota Constitution had repealed the prior existing stockholders' liability. The answers also challenged the authority and right of a receiver to enforce the liability. The new company alleged that it was organized after the

amendment took effect, and hence was not liable.

The court appointed a receiver with the usual powers of a receiver, to take over the property and collect and administer the assets, and in addition the order provided that, "said receiver is hereby authorized and empowered to enforce by appropriate action the constitutional liability of the holders of its capital stock and to administer and dispose of the proceeds and avails thereof, under the direction of this court for the benefit of the complainants and all others similarly situated, etc." The receiver then instituted proceedings against the stockholders of each corporation to recover an assessment in the amount of 100 per cent. of the par value of each share of stock of the corporation of which the stockholder was the record owner. Upon trial of these proceedings the court entered orders against the stockholders of each corporation, and the present appeals are from those orders.

Section 3 of article 10 of the Constitution of Minnesota, prior to November 24, 1930, contained provision that: "Each stockholder in any corporation, excepting those organized for the purpose of carrying on any kind of manufacturing or mechanical business, shall be liable to the amount of stock held or owned by him."

At the 1930 election, the voters of Minnesota adopted a constitutional amendment that had been duly submitted for their approval or rejection. This submission was in the following language.

"Section 1. Amendment proposed.— The following amendment to Section 3, of Article 10, of the Constitution of the State of Minnesota, as hereby proposed ·to the people of the State for their approval or rejection, which amendment, when so adopted, shall read as follows:

"'Sec. 3. The Legislature shall have power from time to time to provide for, limit and otherwise regulate the liability of stockholders or members of corporations and co-operative corporations or associations, however organized. Provided every stockholder in a banking or trust corporation or association shall be individually liable in an amount equal to the amount of stock owned by him for all debts of such corporation contracted prior to any transfer of such stock and such individual liability shall continue for one year after any transfer of such stock and the entry thereof on the books of the corporation or association.'" Laws Minn.1929, c. 429.

On November 24, 1930, the Governor of Minnesota by proclamation announced that the amendment had been approved and adopted.

The new company was organized after the adoption of the amendment. The stockholders of each of the companies were by the order entered held liable to creditors on the theory that the Constitution as it existed prior to the date of the adoption of the amendment continued to provide for a stockholders' liability until the Legislature by enactment abolished such liability, because the amendment was not self-executing and did not effect a repeal of the old section 3, article 10 of the Constitution.

Appellants seek a reversal of these orders on the grounds that (1) the constitutional liability was abolished by the amendment of November 24, 1930; (2) such abolition violated no constitutional rights; and (3) the appellee as receiver cannot enforce the liability if it exists.

■ It has been authoritatively determined that the constitutional provision for stockholders' liability as it existed in the Constitution of Minnesota prior to the amendment of 1930 was self-executing. Way v. Barney, 116 Minn. 285, 133 N.W. 801, 38 L.R.A.(N.S.) 648, Ann.Cas.1913A, 719; Converse v. Hamilton, 224 U.S. 243, 32 S.Ct. 415, 56 L.Ed. 749, Ann.Cas.1913D, 1292.

It seems quite clear that the 1930 amendment was not entirely self-executing. It empowered the Legislature to provide for, limit, and otherwise regulate the liability of stockholders or members of corporations or co-operative associations. That was an authorization to the Legislature, but the question with which we are confronted is not whether it is self-executing, but whether its adoption had the effect of repealing the provisions ·of section 3, article 10, as they existed before the adoption of the amendment.

In Saetre v. Chandler (C.C.A.8) 57 F. (2d) 951, 959 (decided April 25, 1932), in an opinion by Judge Van Valkenburgh, it is said: "The constitutional amendment relied upon does not purport to be self-enforcing, nor itself to alter the terms of existing constitutional provisions, in advance of action by the Legislature upon which it conferred power to provide for, limit, and

otherwise regulate the liability of stockholders."

At that time the Supreme Court of Minnesota had had no occasion to speak upon this question, but in an opinion handed down August 11, 1933, in Sweet v. Richardson, 189 Minn. 489, 250 N.W. 46, 49, the Supreme Court of Minnesota, referring to the amendment, said: "The Legislature, having in mind that by the November, 1930, election the amendment of section 3 of article 10 of the Constitution was adopted, *doing away with the so-called stockholders' double liability in corporations organized under the laws of this state,* except as to stockholders in banking or trust corporations, no doubt enacted chapter 205 for the commendable purpose of speeding up the settlement of the liability hanging over many stockholders in insolvent corporations." (Italics supplied)

This was probably dictum. But the interpretation and construction of the Constitution of a state is peculiarly within the province of the highest court of the state, and its construction will be followed by the national courts. Blue Valley Creamery Co. v. Consolidated Products Co. (C.C.A.8) 81 F.(2d) 182. Considered dictum of that court should not be ignored when a federal court is attempting to construe or ascertain the meaning of the local law, whether it be the state statute or the State Constitution. Blue Valley Creamery Co. v. Consolidated Products Co., supra; Hawks v. Hamill, 288 U.S. 52, 53 S.Ct. 240, 77 L.Ed. 610. Rules applicable to the construction of a statute are equally applicable to the construction of a Constitution. Taylor v. Taylor, 10 Minn. 107 (Gil. 81). It may be conceded that as a general rule an amended Constitution must be read as a whole as if every part of it had been adopted at the same time and as one law. Still the question may remain whether the particular amendment was intended to supersede existing provisions in the Constitution before amendment. People v. Angle, 109 N.Y. 564, 17 N.E. 413. If the constitutional amendment covers the same subject as the original, indicating an intent to substitute it in lieu of the original, the doctrine of implied repeal, though not favored, will be applied, and the original enactment will be superseded. Popfinger v. Yutte, 102 N.Y. 38, 6 N.E. 259; Babb v. City of El Dorado, 170 Ark. 10, 278 S.W. 649; Vincent v. State (Tex. Com.App.) 235 S.W. 1084.

While the Supreme Court of Minnesota has not authoritatively passed upon the question, it has held that rules governing the construction of statutes are applicable to the construction of the Constitution. It has also recognized the doctrine of implied repeal by substitution in statutory construction, having held that although not in express terms repugnant, and though the subsequent statute contained no repealing clause, yet if the subsequent statute was clearly intended to prescribe the only governing rule, it repealed by implication the original act. Nicol v. City of St. Paul, 80 Minn. 415, 83 N.W. 375; School Dist. v. Eckert, 84 Minn. 417, 87 N. W. 1019; Clark v. Baxter, 98 Minn. 256, 108 N.W. 838; Board of Education v. Borgen, 192 Minn. 367, 256 N.W. 894.

It seems clear that the amendment was intended to be substituted in lieu of section 3 as it existed prior to the adoption of the amendment. A complete section 3 was submitted to the electors. There could properly be only one such section. If by this amendment it was intended to retain the provisions of the original with permission to the Legislature to enact different legislation, this could readily have been expressed by embodying the original provision in the proposed amendment. As a further indication of what was intended by this amendment, it is observed that the Attorney General of Minnesota, in an opinion to the Commissioner of Securities (Report of Attorney General of Minnesota, 1932, p. 239), concluded that the amendment superseded and therefore repealed the prior section 3 of article 10. This opinion is, of course, not binding on this court, but it is entitled to great respect and should not be departed from lightly. Standard Computing Scale Co. v. Farrell (D.C.) 242 F. 87.

The procedure for the adoption of a constitutional amendment in Minnesota included the furnishing by the Attorney General of a statement of the purpose and effect of the amendment proposed, showing clearly the purpose and effect of the existing section as it would read if amended. The Secretary of State was required to give three weeks' published notice of such statement prior to election in all legal newspapers of the state. Copies were also required to be furnished to county auditors and town, village, and city clerks for posting. Mason's Minnesota Statutes 1927, § 46. Pursuant to the provisions of this

statute, the Attorney General rendered an opinion to the Secretary of State. In this opinion he said: "The effect of the proposed amendment, if adopted, will be to abrogate the present fixed rule of stockholders' liability prescribed by the constitution, except in the case of stockholders in banks or trust companies * * *."

This statement, furnished by the Attorney General in the performance of his public duty, is entitled to consideration. Yosemite Lumber Co. v. Industrial Acc. Comm., 187 Cal. 774, 204 P. 226, 20 A.L.R. 994; Beneficial Loan Society v. Haight, 215 Cal. 506, 11 P.(2d) 857; Bearden v. Collins, 220 Cal. 759, 32 P.(2d) 604.

We conclude that with the adoption of this amendment, the original section 3 of article 10 was repealed.

The liability of stockholders to creditors under section 3, article 10, before the 1930 amendment, was contractual. Hanson v. Davison, 73 Minn. 454, 76 N.W. 254; State ex rel. Hilton v. Mortgage Security Co., 154 Minn. 453, 192 N.W. 348; Crowley v. Goudy, 173 Minn. 603, 218 N.W. 121. The liability of stockholders in the old company antedated the repeal of section 3, article 10, and hence could not be impaired by the repeal. Coombes v. Getz, 285 U.S. 434, 52 S.Ct. 435, 76 L.Ed. 866; Converse v. Hamilton, 224 U.S. 243, 32 S.Ct. 415, 56 L.Ed. 749, Ann.Cas.1913D, 1292.

It is finally urged that the receiver could not maintain the actions to recover assessments of stockholders' liability. Sections 8025 to 8031, Mason's Minnesota Statutes 1927, provides for proceedings by the receiver to recover the assessments, but it is contended that the corporations here involved were not subject to those statutes because they came under the provisions of Mason's Minnesota Statutes Supp.1936, §§ 7492-61a and 7492-62. The propriety of the order of appointment is not otherwise assailed. The contention in effect is that the order of appointment included property not subject to the possession and control of the receiver. But the appeals here are from the orders assessing the stockholders, not from the order appointing receiver. The court had jurisdiction of the corporations and the subject-matter, and that being true, it had jurisdiction to enter a right order or a wrong order; but whether the order so entered be right or wrong, it is not subject to collateral attack. Vallery v. Denver & R. G. R. Co. (C.C.A.8) 236 F. 176. The order, even if erroneous, was not void, and hence not subject to collateral attack. The personal presence of stockholders was not essential to the jurisdiction of the court in the original suit appointing a receiver. They were so far in privity with the corporation as to be represented by it. The order appointing a receiver has the attributes of a judgment of a court having jurisdiction of the subject-matter, and hence is not subject to collateral attack. Greenfield v. Hill City Land, Loan & Lumber Co., 141 Minn. 393, 170 N.W. 343; McCandless v. Furlaud, 293 U.S. 67, 55 S.Ct. 42, 79 L.Ed. 202. The record does not indicate that any contention was made in the lower court of the lack of authority of the receiver to sue, or that the order granting him power to collect from the stockholders was irregular or void. This contention is not tenable, and we are of the view that the receiver had the right to maintain these proceedings.

The order levying assessments upon the stockholders of the new company is therefore reversed, and the order levying assessments upon the stockholders of the old company is affirmed.