Charles L. DAVIS and Arthur J. Lewis, Plaintiffs,

v.

Melvin D. SYNHORST, Secretary of State of Iowa, et al., Defendants.

Civ. No. 5-1289.

United States District Court
S. D. Iowa,
Central Division.
Jan. 14, 1964.

Harry H. Smith, Sioux City, Iowa, Robert F. Wilson, Cedar Rapids, Iowa, C. A. Frerichs, Waterloo, Iowa, for plaintiffs.

Evan Hultman, Atty. Gen., Wilbur N. Bump, Sol. Gen., Des Moines, Iowa, for defendants.

Before VAN OOSTERHOUT, Circuit Judge, STEPHENSON and McMANUS, District Judges.

STEPHENSON, District Judge.

This matter came on for further hearing pursuant to Order of this Court dated May 3, 1963, Davis v. Synhorst, 217 F. Supp. 492 (S.D.Iowa). In the opinion filed at that time, this Court expressed the view that the constitutional provisions providing for apportionment of the House of Representatives established by the 1904 amendment and the limitation of one senator to a county, established by the 1928 amendment "in combination prevent proportionate representation in both houses of the General Assembly, and that the constitutional provisions, as they now stand, are invidiously discriminatory and in violation of the equal protection clause of the 14th Amendment." (217 F.Supp. p. 501). However, the Court deferred opinion upon all constitutional issues then

pending and withheld a decree to permit the voters of Iowa to vote on a new apportionment plan (called the Shaff Plan) which had passed two sessions of the state legislature and was scheduled for a vote of the people December 3, 1963. That vote has now been held and the Shaff Plan was rejected as follows: "no" 272,-382; "yes" 190,424. The parties are now before us seeking further relief.

Plaintiffs contend that a decree should now be entered declaring that: said amendments (1904 and 1928 amendments) together with implementing legislation enacted pursuant thereto are invalid prospectively and after this date; that the invalidation of these amendments revives the sections as they existed prior to said amendments which in substance reinstates these sections as they existed in the Constitution of 1857 (Article III, Sections 34, 35, and 36, Iowa Constitution adopted in 1857), I.C.A.;[1] that if the legislature fails to reapportion the state senatorial and representative districts in accordance with these sections of the 1857 Constitution by March 1, 1964, this Court direct elections for members of the legislature to be held on an at-large basis or in the alternative, upon the failure of the legislature to so apportion, this Court do so.

The defendants contend that: there is no revival of pre-existing state constitutional provisions after amendments thereto have been declared unconstitutional; that if said constitutional provisions (1904 and 1928 amendments) are declared unconstitutional, there would be no constitutional provisions governing apportionment of the Iowa General Assembly; that the Court should exercise the abstention doctrine and retain jurisdiction while the General Assembly initiates a new constitutional system for apportioning the legislature.

We will first consider the question of revival. Assuming this Court decrees that the 1904 and 1928 amendments in combination are invalid (we have already expressed that opinion), does that revive the constitutional provisions as they existed prior to said amendments? We do not think so.[2] We have found no Iowa cases where this problem arose in connection with constitutional provisions. Rules applicable to statutory construction are similar to constitutional construction. Town of McGregor v. Baylies, 19 Iowa 43, 46 (1865); Badger v. Hoidale, 88 F. 2d 208, 211, 109 A.L.R. 798 (8 Cir.1937); 11 Am.Jur. § 49 (p. 658). In Talbott v. City of Des Moines, 218 Iowa 1397, 1400, 257 N.W. 393, 395 (1934) the Court in holding a void amendment to a statute did not prevent revival of the previous statute said as follows: "If an act is repealed by an unconstitutional amendment, the former act remains in force when the unconstitutional amendment is declared void, providing this result gives effect to the Legislature's intention." The matter of legislative intent is controlling. Childs v. Shower, 18 Iowa 261, 272 (1865); Edge v. Brice, 253 Iowa 710, 718, 113 N.W.2d 755, 759 (1962). Under the circumstances existing in this case it is difficult to say that the legislature and the people in adopting the 1904 scheme of apportionment intended that upon the occurrence of subsequent shifts in population rendering this scheme unconstitutional there would be a mandatory return to the requirements of the Constitution enacted in 1857.

1. We do not necessarily accept plaintiffs' view of apportionment under the Constitution of 1857. For instance, plaintiffs suggest a possible arrangement of House of Representative districts varying from one to eight representatives per district, the latter being Polk County. The plain language of Section 35 seems to indicate a maximum of two representatives was allotted to a county. Records indicate that during the period 1858–1882 the number of representatives per county or district varied from one to four. This section has not been construed in the Courts.

2. Judge McManus, though still inclined toward the view of revival as expressed in his dissent (217 F.Supp. 509), at this stage of the case considers the alternate mode of relief herein adopted equally appropriate and therefore does not dissent.

■ The 1904 Amendments (Article III, Sections 34, 35, and 36) provided for the express repeal of the same sections in the Constitution of 1857. The 1928 Amendment contained no such repealer and dealt with only one section of the apportionment provisions (Section 34) by adding thereto the words "but no county shall be entitled to more than one (1) senator." At the time the 1928 amendment was enacted Polk County had a population 3.2 times the population of the average senatorial district. Thus it can be argued that since the 1928 amendment was invalid when enacted it should now be declared invalid, and further that since representation in the house was not disproportionate at the time of enactment of the 1904 amendments and in the absence of guidance from the United States Supreme Court as to whether one house may be disproportionate, this court should now abstain from deciding the validity of the 1904 amendment. The practical results of such action would not be satisfactory. The people of Iowa have just rejected a plan whereby the senate was apportioned solely on population and the house solely on a county-area basis. The will of the people expressed by a vote on a constitutional amendment must be given serious consideration. Davis v. Synhorst, supra, 217 F.Supp. p. 500, 504. Under our Constitution the ultimate power is with the people. In Article I, Bill of Rights, Sec. 2, it is stated "All political power is inherent in the people. Government is instituted for the protection, security, and benefit of the people, and they have the right, at all times, to alter or reform the same, whenever the public good may require it."

■ In 1904 the legislature and the people had before them a complete apportionment plan. We are not considering the validity of a minor feature of that plan, but are determining whether that plan meets Federal Constitutional requirements which forbid invidious discrimination. We have already held that:

"The existing constitutional pattern for reapportionment of the house established by the 1904 amendment and the limitation of one senator to a county, established by the 1928 amendment, effectively prevent the legislature from accomplishing anything approaching proportionate representation in the respective branches of the legislature." Davis v. Synhorst, supra, 217 F.Supp. p. 501.

It is the view of the Court that Article III, Sections 34, 35, and 36 of the Iowa Constitution which have as their object and purpose the establishment of a complete apportionment plan for the selection of members of both houses of the General Assembly are inseparable. Under the circumstances of this case it is our opinion that said sections in combination are inseparable. See Smith v. Thompson, 219 Iowa 888, 894–898, 258 N.W. 190, 194–196 (1935); State ex rel. Fletcher v. Executive Council, 207 Iowa 923, 934–935, 223 N.W. 737, 742 (1929).

■■ There are other restrictions on apportionment contained in Article III. Section 37 provides:

"When a * * * senatorial, or representative district shall be composed of two or more counties, it shall not be entirely separated by any county belonging to another district; and no county shall be divided in forming a * * * senatorial, or representative district."

Plaintiffs have not attacked the validity of this section. It is the view of the court that Section 37, in itself, is not invidiously discriminatory. Neither is it an inseparable feature of the constitutional apportionment provisions. This section has remained intact commencing with its adoption in the Constitution of 1846 (Article III, Section 32).[3]

3. Although not dissenting, it is the view of the writer of this opinion that a persuasive argument can be made that the restriction against districting a county conflicts with the requirement of equal protection of the laws required by the Federal Constitution. See Sims v. Frink, 208 F.Supp. 431, 442 (M.D.Ala.1962).

## REMEDY

■ It has been suggested on the one hand that we declare the 1857 Constitution revived. We have found there is no persuasive reason for reviving provisions of the 1857 Constitution. On the other hand it has been suggested we permit the legislature to commence action on new constitutional provisions. This should be done. But it is not enough. Steps should be taken now to remove the malapportionment that exists in the Iowa legislature. We hold that certain constitutional restrictions are prospectively invalid. The legislature should at once adopt an apportionment plan which conforms to federal constitutional requirements, and place the same in effect in time for this year's elections. New constitutional provisions can also be considered for ultimate submission to the people. If further guide lines are announced by the Supreme Court there is no reason why steps cannot be taken for the enactment of new constitutional provisions. In the meantime steps can be taken by legislative action to remedy the malapportionment that now exists. It should be emphasized we have held invalid only certain constitutional restrictions on apportionment. The many other constitutional provisions regarding the Legislative Department remain in effect. Until new constitutional provisions are adopted the legislature has the power to adopt an apportionment plan. Iowa Constitution, Article III, Section 9 provides in part as follows: "Each house * * * shall have all other powers necessary for a branch of the General Assembly of a free and independent State." The requirements of the Federal Constitution, of course, must be met in both the temporary apportionment plan and the ultimate constitutional provisions to be submitted to the people.

■ In the absence of further direction from the Supreme Court of the United States it is difficult to furnish precise standards for apportionment under Federal constitutional requirements. Upon consideration of the pronouncements that have been made by the Supreme Court of the United States and based on the evidence offered in this case including the matters concerning our State of which the Court takes judicial notice and in view of the expression of the voters of Iowa on the Shaff Plan, we suggest the following general guide lines for legislative apportionment in Iowa: (1) one house of the General Assembly shall be apportioned on a population basis; (2) any departure from a population basis in the other house shall be on a rational basis; extreme departures from a population basis such as now exist in the General Assembly, or as were proposed under the Shaff Plan which was rejected, cannot be justified; (3) a new apportionment plan in accordance with these standards shall be enacted by a special session of the legislature which will govern the composition of the General Assembly commencing with its regular session in 1965; (4) proposed amendments to the Constitution of the State of Iowa governing apportionment of the General Assembly deemed to be necessary shall be submitted to the people for ratification as rapidly as is feasible. In view of the time consumed in adopting

The disparity now existing in Iowa between the population of the smallest county (Adams 7,468) and the largest county (Polk 266,315) lends support to the contention that such a requirement is unduly restrictive. The requirement of contiguity and the prohibition against districting within a county complicate the task of population apportionment. See 39 Iowa Law Rev. 558. Section 37 is an integral part of the county-oriented apportionment scheme. It was a part of the Constitution when the 1904 and 1928 amendments were adopted and must be considered as a part of the whole apportionment plan. Under the circumstances of this case it is the view of this writer that Section 37 is an inseparable part of an apportionment scheme that has been declared invalid by this Court. Sincock v. Duffy, 215 F.Supp. 169, 188, 195 (D.Delaware 1963); See also, Carter v. Carter Coal Co., 298 U.S. 238, 312, 56 S.Ct. 855, 80 L.Ed. 1160 (1936); Badger v. Hoidale, 88 F.2d 208, 211, 109 A.L.R. 798 (8 Cir. 1937); 11 Am.Jur. Sec. 52, p. 661.

constitutional amendments under present Iowa constitutional requirements, there is justification for delay in proposing constitutional amendments pending further direction from the Supreme Court of the United States which may be forthcoming in decisions regarding apportionment now under submission to that Court; (5) reapportionment is a legislative responsibility. We have no reason to believe that those concerned will not exercise their various responsibilities promptly. Judicial intervention is highly undesirable. We will not interfere unless compelled to do so by failure of the legislature to adopt an apportionment plan in accordance with the foregoing guide lines.

Judgment will be entered accordingly.

## JUDGMENT ENTRY

Pursuant to Memorandum Opinion bearing this date, which pursuant to Rule 52(a) constitutes this Court's findings of fact and conclusions of law, it is

Ordered and adjudged as follows:

1. That this statutory three-judge court has been duly constituted and that this court has jurisdiction of the parties and subject matter of this action; that a justiciable cause of action is stated; that the plaintiffs have standing to challenge the Iowa constitutional and statutory provisions for the apportionment of members of branches of the Iowa General Assembly, and that this court has the power to decide the controversy presented.

2. That the 12th Amendment (amendment 2 of 1904) and the 16th Amendment (amendment of 1928) to the Iowa Constitution, which substitute new Sections 34, 35, and 36 to Article III of the 1857 Constitution, and implementing legislation enacted pursuant thereto, Chapters 41 and 42, Code of Iowa, 1962, I.C.A., are invidiously discriminatory against the plaintiffs and their class, and they are hereby declared prospectively null and void, and inoperative for all future elections to the General Assembly of the State of Iowa, except elections to fill vacancies in the present General Assembly.

3. That the provisions of Sections 34, 35, and 36 of Article III of the 1857 Constitution, repealed by the 1904 Amendment, are not revived.

4. That the State of Iowa, through constitutional procedures, has a right to provide for an apportionment plan which meets with Federal constitutional standards. Considerable time, even under favorable circumstances, will necessarily be required to perfect new State constitutional standards with respect to apportionment, and plaintiffs cannot be expected to wait for relief from invidious discrimination until such constitutional changes can be accomplished. The present General Assembly has the power to and is the appropriate body to provide for interim reapportionment which meets Federal constitutional standards, and action should be taken in time to make new apportionment provisions operative with respect to the 1964 election for members of the General Assembly which meets in regular session in 1965.

5. That this Court will abstain from attempting to impose at this time an apportionment plan provided a special session of the General Assembly of the State of Iowa is convened with reasonable promptness and action taken for reapportionment in accordance with the general guide lines for legislative apportionment set out in the memorandum opinion bearing this date and filed herein.

6. That if a special session of the legislature is not called within a reasonable time, or if the legislature is convened and it becomes apparent that no substantial progress has been made to provide for constitutional apportionment, this court reserves jurisdiction to consider prescribing an interim plan of reapportionment.

7. That jurisdiction is reserved to conduct such further hearings and make such further orders as may be appropriate or necessary upon the Court's own motion or upon motion of either party.